1

```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
2                     NORTHERN DIVISION

3


4       UNITED STATES OF AMERICA

5            v.                        CRIMINAL CASE NO.
6                                         CCB-16-051

        GLEN KYLE WELLS,
7
             Defendant
8       _____/

9


10                   (Sentencing)
                Thursday, February 22, 2018
11              Baltimore, Maryland

12

        Before:  Honorable Catherine C. Blake, Judge
13


14


15      Appearances:

16           On Behalf of the Government:
              Leo J. Wise, Esquire
17            Derek E. Hines, Esquire

18           On Behalf of the Defendant:
              Marshall T. Henslee, Esquire
19

20

21

22      Reported by:
        Mary M. Zajac, RPR, FCRR
23      Fourth Floor, U.S. Courthouse
        101 West Lombard Street
24      Baltimore, Maryland 21201

25
```

1           (Proceedings at 9:24 a.m.)

2           MR. WISE:  The case is United States of America versus

3    Glen Kyle Wells, Criminal Number 16-51-CCB.  Leo Wise and Derek

4    Hines for the United States.  With us at counsel table is

5    Corporal David McDougall of the Harford County Sheriff's Office

6    and Detective Scott Kilpatrick of the Baltimore County Police

7    Department.  We're here this morning for sentencing, Your Honor.

8           THE COURT:  All right.  Thank you.  Good morning.

9           MR. HENSLEE:  Good morning, Your Honor.  Marshall

10   Henslee.  I am here on behalf of Mr. Wells, who's with me here at

11   the trial table.  Nice to see you.

12          THE COURT:  All right.  Thank you.  You can be seated.

13   All right.  We are here for a sentencing for Mr. Wells following

14   his conviction on Count One, conspiracy to possess with intent to

15   distribute heroin.  I have reviewed, obviously, the Presentence

16   Report, also the sentencing memorandum filed by Mr. Henslee, and

17   a number of letters attached to that.  I'm aware there are

18   various issues about the guidelines, which we will get to in a

19   minute.

20          But other than that, as to the Presentence Report, does

21   the government have any additions, corrections, or modifications?

22          MR. WISE:  No, Your Honor.  Thank you.

23          THE COURT:  All right.  And, Mr. Henslee, I know you've

24   reviewed the Presentence Report.  For the record, has your client

25   had the chance to review it with you?

3

1          MR. HENSLEE:  He has.

2          THE COURT:  And other than guideline issues, any

3   unresolved corrections, additions, modifications?

4          MR. HENSLEE:  The only thing I would add is that, and

5   it makes clear in the Presentence Report, that the summary of

6   facts in there is the one provided by the government.  As you can

7   see in some of my arguments about the guidelines, I disagree with

8   some of the facts.  But other than those that are noted in my

9   memorandum, I don't have any changes to make.

10          THE COURT:  Okay.  All right.  Well, let me start on

11   the guideline calculation, then, that we need to do.  I see a

12   couple of issues.  And I'll see how the government wants to,

13   wants to proceed.

14          As far as criminal history, if I'm not mistaken,

15   whether or not Mr. Wells is a career offender, he is still a

16   Criminal History Category VI based on his prior record, 14

17   points.

18          All right.  So there are various issues as to the

19   offense level, starting with, with the quantity of drugs.  There

20   are various other issues about possession of a firearm, threat of

21   violence, organizer/leader, whether he's a career offender which,

22   if he is a career offender, that would be an Offense Level 34,

23   Criminal History Category VI.  So he'd be in a 262 to 327 month

24   range.

25          All right.  How does the government want to proceed on

1    these various offense levels?

2              MR. WISE:  As Your Honor just indicated, I think if, I

3    mean, if the career offender issue, if he is found to be a career

4    offender, it makes the underlying additional disputed guideline

5    factors sort of somewhat academic.  So it may make sense to

6    address the career offender first.

7              THE COURT:  Sure.  Go ahead with that.

8              MR. WISE:  Your Honor, there are, this, obviously, is a

9    controlled dangerous substance violation.  And there are, he has

10   the requisite number of prior felony convictions for CDS-related

11   offenses that qualify him as a career offender.  I know Mr.

12   Henslee has submitted in his sentencing memorandum a version of

13   the argument that's been made by the Federal Public Defender's

14   Office, but we believe, under the circumstances of this case, he

15   is appropriately determined to be a career offender.

16             THE COURT:  Okay.  Mr. Henslee, is there anything you

17   want to add to the very elaborate argument in your memorandum?

18             MR. HENSLEE:  No.  I think I briefed it very well and I

19   just rest on that argument.

20             THE COURT:  Okay.  Well, you did brief it well.  It's

21   an interesting theory.  I'm going to disagree with it.  I think,

22   unlike some of the issues that we've gotten into with crimes of

23   violence, I think what we have here is relatively

24   straightforward.

25             Mr. Wells was convicted of a conspiracy/possess with

1    intent to distribute heroin.  I think that fits within the

2    definition of the guidelines.  He must have been found guilty by

3    the jury of joining in the conspiracy, knowing that the objective

4    was to distribute drugs.  So it seems to me that is, the fact

5    that it is a conspiracy does not take it out of the realm of

6    being a controlled substance offense.  And I believe it to be the

7    same that underlying prior offenses are, those in Paragraphs 25

8    and 27.  I think Paragraph 25 was a possession with intent to

9    distribute marijuana.  That's clear.  And Paragraph 27, the CDS

10   manufacture, distribute, recalled Mr. Henslee's argument being

11   that it could be accomplished by an offer to sell.  Assuming that

12   to be the case, I still think that's sufficient to qualify as a

13   prior substance offense under the guidelines.  These are felony

14   offenses, serious offenses, and they involve distribution of

15   drugs.

16        I will find that Mr. Wells is a career offender.  And,

17   therefore, we have an offense level of 34 and a criminal history

18   category of VI.

19        Now, I don't know if you want to be heard at all on the

20   other guidelines issues or we'll simply incorporate that into

21   3553(a).  I intend to announce a sentence that, while taking into

22   account the guidelines, would not necessarily be affected by a

23   different ruling if I happen to be wrong about the career

24   offender status.

25        MR. WISE:  For those reasons, Your Honor, I think our

1  view would be the most efficient way to proceed would be to

2  address the at least factual issues that the guideline disputes

3  have raised in the context of 3553(a), and talk about Mr. Wells'

4  role sort of more holistically in the conspiracy, as well as his

5  individual conduct, as the Court makes its particularized

6  determination.

7  THE COURT:  Okay.  All right.  Well, if you would like

8  to proceed, Mr. Wise.  And then we'll obviously hear from Mr.

9  Wells' side.

10  MR. WISE:  Thank you, Your Honor.  As Your Honor

11  recalls from trial, this, this organization was a kind of

12  collection of equals or semi-equals to a certain extent, is an

13  apt way to describe it.  We'd clearly argue that Mr. Shropshire

14  was the leader.  But then below him, probably with the exception

15  of Mr. Thomas, referred to, you know, as Lil Brill, would

16  certainly suggest a role subsumed by Mr. Shropshire.  You saw and

17  heard, the jury heard about the various kinds of criminal conduct

18  that the other defendants engaged in.  Mr. Wells, I think, was a

19  unique figure in that group, again, not necessarily in a

20  hierarchical sense, but in terms of what he substantively, his

21  substantive involvement.

22  Now, on the one hand, Your Honor heard from Mr.

23  Waldman, one of the customers, that he had actually directly

24  bought, and Mr. Taylor, Mr. Hines is reminding me, that they had

25  actually bought heroin directly from Mr. Wells.  So he's not,

1     he's not completely unique in the sense that all of the other

2     defendants had direct contact with customers and he did not.

3     There was record evidence that he had contact with customers,

4     although that testimony was that it had been earlier in the

5     conspiracy.

6            What Your Honor also saw is that perhaps unique among

7     the members of the conspiracy, he was identified actually as a

8     source of supply.  And this is from Government Exhibit 2-B, which

9     were the transcripts of audio jail calls.  The first that the

10    jury heard was a jail call from December the 30th of 2015, where

11    Mr. Wells was discussed, Your Honor will recall, there was

12    testimony he went by the nickname Lou.  And Mr. Campbell

13    describes how Mr. Wells had given him 65, which was a reference

14    to heroin, the other day.  And then later, just a few days

15    later -- again, that was 12/30 -- just a few days later in

16    another conversation between Campbell and Washington on January

17    the 1st of 2016, Campbell, who's out, this is after Washington

18    has been arrested, he was the first member of the conspiracy

19    arrested, Campbell is describing how he's waiting on Wells for

20    supply, and then he describes how Wells has supplied, the

21    reference to "on deck", and that he doesn't provide him less than

22    40, less than 45, for real.

23           We don't know the duration of this.  We don't know how

24    long he's a source of supply for the conspiracy.  We're not very

25    clear about that.  But clearly he's providing, he's providing

1  heroin that can then be resold by the other members of the

2  conspiracy.  And that's, I think, what the record evidence shows

3  from the time.

4           So he has some direct-to-customer contact.  He also

5  provided supply for the rest of the members of the conspiracy,

6  which, I said it's not necessarily a hierarchical relationship,

7  but it is, a supplier is a significant, perhaps a more

8  significant participant than a seller, than a reseller, because

9  the resellers, in this case the rest of the conspiracy, depend on

10  the supply that Mr. Lou, among others -- Mr. Wells, among others,

11  can procure.

12          The other two features of Mr. Wells that are, that are

13  quite unique are, one, his relationship with Detective Gondo.

14  And as the testimony at trial established, while Detective Gondo,

15  because Mr. Wells ultimately did get to know Mr. Shropshire --

16  the original relationship was between Mr. Gondo and Mr. Wells.

17  And I think the more enduring relationship was between Mr. Gondo

18  and Mr. Wells.

19          Your Honor will recall Mr. Shropshire reached out to

20  Detective Gondo when he discovered the DEA tracking device, and

21  Detective Gondo told him to take it off and put it on another

22  car.  But Detective Gondo testified he was, his first concern was

23  protecting Mr. Wells from law enforcement.  And so Your Honor saw

24  evidence of Mr. Gondo, former Detective Gondo, providing location

25  information, for instance, of where the other members of the GTTF

1    were, reaching out to Mr. Wells to protect him and provide him

2    with information to evade law enforcement.

3         So Mr. Wells brought that relationship to, to the

4    conspiracy.  And then it was, it was valuable not only to him,

5    but to other members, so much so that Mr. Shropshire actually

6    felt like he could reach out to Mr. Gondo, which he did, and, and

7    help navigate what law enforcement was doing to try to, to try to

8    detect him.

9         The broader story on this, Your Honor, and this didn't

10   necessarily come out at trial, but, you know, the BPD case, the

11   BPD corruption case began out of this case.  And the law

12   enforcement had been surveilling and attempting to break up the

13   Shropshire drug organization for a significant period of time.

14   And the theory -- and it was only a theory originally -- was that

15   they were able to evade law enforcement precisely because there

16   was a police officer protecting them.  And that wasn't something

17   that was stumbled upon.  That was the original law enforcement

18   thesis.

19        And very early on when we were actually attempting to

20   tap Shropshire's phone, we saw contact with Gondo.  And so that's

21   how he emerged.  And it later, of course, was confirmed by

22   Shropshire reaching out to him.  And then once we were on Gondo's

23   phone, we saw what Gondo was doing proactively.

24        Out of that relationship, of course, came the other

25   episode that makes Mr. Wells unique, which is the armed home

1    invasion of Marnat Road.  And Your Honor heard testimony, the

2    genesis of which was actually Mr. Washington's suggestion that

3    they kill Mr. Anderson, who was a rival drug dealer.  And it was,

4    I don't know if "moderating influence" is the right word, but it

5    was Mr. Gondo's approach that they could use one of their illegal

6    GPS trackers to track Mr. Washington's -- Mr. Anderson's

7    movements to try to accomplish the home invasion when no one was

8    there.

9            Now, of course, they were unsuccessful.  And there was,

10   I thought, very compelling testimony both from Mr. Rayam, who

11   went in with Mr. Wells, and Ms. Cousins, who was the victim that,

12   you know, despite their efforts to make this a burglary, it was,

13   in fact, an armed robbery.  Ms. Cousins was home at the time.  A

14   firearm was brandished by Mr., by Mr. Rayam.  She was threatened

15   and they, you know, very quickly were able to steal a significant

16   quantity of heroin, approximately 800 grams of heroin, a firearm,

17   cash, a piece of jewelry, that they then, they being Mr. Wells

18   and Mr. Rayam, Mr. Gondo, sort of immediately split up.  And then

19   the testimony was that Mr. Wells gave another member of the

20   conspiracy, Mr. Washington, who sort of provided the information

21   that there was money to be had at Anderson's house, a portion of

22   the proceeds.

23           So if this were just a Hobbs Act robbery case, I mean,

24   I looked at the -- the guidelines for a Hobbs Act robbery case

25   with his criminal history are still substantial.  I think, by my

1    calculation, would be about 120 to 150 months because the Hobbs

2    Act base is 20, plus a firearm being brandished was an additional

3    five.  And then a firearm being stolen is an additional one

4    point.  So for an adjusted offense level of 26 at a base offense

5    level, at a criminal history of VI, that's as if this was a

6    one-time robbery.  Of course, this is located in a larger heroin

7    conspiracy.  Obviously, the career offender guidelines take it,

8    you know, take the guideline range very high.

9            What we think is an appropriate sentence is -- and not

10   because we're simply sort of copycatting what happened -- but the

11   sentence Your Honor gave Campbell we think is an appropriate

12   sentence when one considers while Campbell had a more

13   demonstrable day-to-day role, you know, it's easier to tell what

14   Campbell was doing because he had customer contact and we could

15   call a variety of those customers.  If you put that on one side

16   of the scale, there obviously isn't that kind of customer contact

17   evidence for Wells.  But I think balancing them out is the

18   supplier role for Wells, the assets that Wells brought in terms

19   of his relationship for Gondo that protected the organization,

20   and then, most egregious, the fact that there was this, this

21   armed robbery of a rival drug dealer that Wells was an active

22   participant in.

23           So we think when you sort of balance those two things

24   out, they are, we think, comparable, and a sentence of 188 months

25   would avoid disparities given the sentence the Court has imposed.

1   Thank you, Your Honor.

2          THE COURT:  Thank you.  Appreciate that, Mr. Wise.  Mr.

3   Henslee.

4          MR. HENSLEE:  Thank you, Your Honor.  One, and this is

5   a fairly minor disagreement, this particular one is that I think

6   Mr. Hines and Mr. Wise argue that, I think it was Robert Taylor

7   they were referring to.  Frankly, I didn't remember that he said

8   he bought from my client.  I looked at my trial notes.  I didn't

9   see that I wrote that down.  It's certainly conceivable that

10  somehow I missed that.  But, nonetheless, it's either one or two

11  people saying that they, you know, bought from Mr. Wells.

12         So, you know, to some degree I was going to make some

13  arguments to you about why you should go below the guidelines if

14  you find him to be a career offender.  And I suppose Mr. Wise in

15  his recommendation has sort of made those, maybe not quite as

16  pressing, at least from their recommendation.

17         THE COURT:  Sure.

18         MR. HENSLEE:  But what I will say is that Mr. Wells,

19  you have found him to be a career offender.  That is based on two

20  felony convictions, one in 2006 and one in 2009.  One was for

21  possession with intent to distribute marijuana, and the other was

22  for distribution of marijuana.

23         I realize that under the career offender status, that

24  it makes no difference that the drug in both of those cases was

25  marijuana and not cocaine or heroin or something more serious.  I

1   just would say that I think that is something that this Court

2   should consider when determining whether a variance should be

3   applied here and whether you should go below.

4           I think it is clear across the country, probably since

5   that career offender law was written, that I think most of the

6   country thinks that marijuana should be treated differently than

7   heroin or cocaine.  It clearly qualifies in the statute.  I am

8   not arguing it legally doesn't.  But I do think the Court should

9   consider that when determining what sort of sentences that --

10          THE COURT:  Sure.

11          MR. HENSLEE:  -- the nature of the drug and those prior

12   convictions.

13          THE COURT:  Let me just suggest sort of alternatively,

14   and I'm not making a final ruling on it, but it also occurs to

15   me, I mean, if I were looking at the, at the guidelines, and I

16   don't know if you, I think, and you don't have to tell me, if you

17   concede, but that at a minimum would be at an Offense Level 28,

18   which is the 700 grams to a kilo.  I think realistically we would

19   at least be at a 30, frankly, because there was evidence of his

20   being a supplier, and some additional amount beyond the direct

21   sales would be foreseeable to him.

22          So with the criminal history category of VI, we're kind

23   of in that range that the government is suggesting, anyway.  It

24   seems to me I've got like an Offense Level 28, Criminal History

25   Category VI, is 140 to 175, but a 30 is 168 to 210.  There could

1    likely be another two levels, either for threat of violence or

2    possession of a firearm.

3           Again, I'm not making a final ruling on those

4    guidelines.  I don't think I have to.  But I have that in mind as

5    well.

6           MR. HENSLEE:  I certainly agree that I think that the

7    base offense level, based on the jury's verdict, would have to be

8    28.  And I think the government certainly would have arguments to

9    make about those adjustments that you mentioned.  I wouldn't

10   concede them.

11          THE COURT:  Sure.

12          MR. HENSLEE:  But I would say that the government

13   definitely would have arguments to make about those.

14          The one I think that I find to be, is not, was

15   completely unsupported in the evidence was the notion that my

16   client was an organizer, a director of five or more people.

17          THE COURT:  Right.

18          MR. HENSLEE:  I just didn't think the facts at trial

19   supported that at all.

20          THE COURT:  No.  I agree with you.  And my guess is

21   that the government would not be pressing it, anyway, at this

22   point.  But I agree with you under what I think the Fourth

23   Circuit case law is, that it would not be supported.

24          MR. HENSLEE:  Okay.  The other factual disagreement

25   that I have, and with the government, is that it certainly, at

1   least in the statement of facts that they supplied to the

2   probation officer that ended up in the Presentence Report, their

3   version, they really want to attribute almost 18 kilograms of

4   heroin to Mr. Wells.  I'd also say that I don't believe that the

5   evidence that was introduced at trial supported that.

6          There certainly was the evidence that was introduced by

7   Detective Rayam and Detective Gondo, former Detective Rayam and

8   Detective Gondo, about the amount of heroin that was seized

9   during this home invasion on Marnat Road.  But other than that,

10  there was very, very little evidence about things.

11         Now, I suppose it seems that the government's theory in

12  that might have been that because they want, in that statement of

13  facts they say he is the supplier to the entire organization over

14  the course of seven years, essentially, frankly, my client was

15  incarcerated for part of that.  He was, you know, in the hospital

16  for a lot of that.  So, you know, as you have sort of indicated

17  without making a ruling, that base offense level 28 was where I

18  came down on the amount of drugs that I felt like that the

19  government proved beyond a reasonable doubt was reasonably

20  foreseeable to my client.

21         THE COURT:  Sure.  And as I say, I would probably be

22  somewhat above that.  I think that this went on for quite

23  sometime.  And he was at least, for a part of that time, a

24  supplier.  And I think the standard of reasonable foreseeability

25  would, as I say, at least get us to an Offense Level 30.  But I

1   agree with you, I'm not sentencing him as if he were responsible

2   for 17 or 18 kilos.

3         MR. HENSLEE:  The other thing that was noteworthy about

4   Mr. Wells' case is that because of his sort of late involvement,

5   because of what he, we really never had an opportunity to engage

6   in any sort of meaningful plea negotiations with the government.

7   There was certainly at least some discussion about whether Mr.

8   Wells wanted to cooperate or not or something along those lines.

9   And then after that there was -- so there was really never sort

10  of any official plea offer made to my client.

11        And I'm not, I mean, it was very compressed time-wise.

12  So I'm not necessarily saying bad on them or anything like that.

13  But we didn't have that opportunity, really.  I mean there

14  wasn't, there just wasn't a whole lot of time involved.

15        I'm sure the government would say, well, that's Mr.

16  Wells' fault, he was evading, you know, capture.  I don't know

17  that's true.  I just know he was arrested much later than

18  everybody.

19        I also, and I'm sure that you've had an opportunity to

20  read the numerous letters that I attached --

21        THE COURT:  I did.

22        MR. HENSLEE:  -- to my sentencing memorandum.  And I am

23  certainly not going to go through them all.  You've read them and

24  I'm sure the government's read them.  I just wanted to reflect on

25  some of the character traits that I found to sort of be repeated

1    in those letters.

2            First of all, it was mentioned several times about Mr.

3    Wells' involvement with his daughter and that he is referenced in

4    almost every letter as being a devoted father who loves his

5    daughter and is there for her on a daily basis, really.

6            In one of the letters that came from his aunt -- I

7    believe it was his aunt -- it referenced Mr. Wells' own father

8    and kind of his, how his own father was very involved in Mr.

9    Wells' life and tried to pass along life lessons and whatnot, and

10   that they really viewed Mr. Wells as trying to honor that by

11   being a good father to his daughter.

12           It certainly referenced numerous times in the letters,

13   and I've never seen anything nor had any conversation with my

14   client to make me think that anything other than that is true;

15   that he is a devoted father, that he loves his daughter very

16   much, that he cares for her, wants to be involved in her life,

17   and will be involved in her life no matter, you know, what the

18   sort of ultimate conclusion to this case is.

19           The other thing is that, again, numerous times it's

20   mentioned that Mr. Wells' father died several years ago.  And

21   it's mentioned there that it frankly had a big impact on the

22   family as a whole, and that Mr. Wells, to the degree that he

23   could, did everything he could to sort of step into that role.

24           As you read, I think, in a couple of those letters, and

25   frankly in the presentencing report, Mr. Wells' mother is in

1    declining health.  She has had several strokes in the last few

2    years.  She has early onset Alzheimer's.  And she requires care

3    and has for some time.  And everyone that I've talked to in the

4    family and in speaking with Mr. Wells say that he was a devoted

5    son, that he cared for his mother, again, on a daily basis, that

6    he supplied for her, did everything he could to help her, make

7    her life easier.

8            And many of the letters reference, you know, not just

9    that to mother, but just in general with the family.  That he was

10   a source of comfort to the family as a whole.  He was very

11   involved in his family's life and community.

12           The other thing that struck me, there was a letter in

13   there, I think from a friend of Mr. Wells, about the work that

14   Mr. Wells did with some children in the community, in referencing

15   particular athletic contribution, that he would act a coach.  Mr.

16   Wells is a fairly accomplished athlete.  Played golf, football,

17   basketball.  Was pretty good at all of those.  So I think for him

18   athletics was something that he always appreciated and found

19   value in.

20           He clearly, again, in that one particular letter from

21   his friend, tried to do what he could to pass that on.  The

22   friend even references, you know, he would, Mr. Wells would try

23   to do more than just be a coach.  He would try to, you know, help

24   kids make sure they were staying in school, make sure they were

25   going on the right path, which I understand is a bit at odds with

1    what was going on.  But that's not unusual in cases like this

2    often.

3            So, you know, I said sometimes in a situation like this

4    you have a person where you feel like they had just essentially

5    just dedicated their life to crime and doing bad things.  And

6    then you have people who, other than that, are productive, good

7    members of society, sort of have maybe one foot in, one foot out,

8    kind of.  And I do think that Mr. Wells is one of those.

9            He clearly has value to the people in his community, to

10   the people in his family.  He clearly has provided value to them,

11   and is more than just this trial, is more than just what happened

12   here.

13           I think all of that should be considered by this Court

14   in deciding what punishment is appropriate here for Mr. Wells.

15           Mr. Wells also has written a letter.  I only got it

16   this morning, so I apologize.  I've given the government a copy

17   of it so that they could review it.  If I could just maybe

18   approach and pass it up to you.

19           THE COURT:  Sure.  Of course.

20           MR. HENSLEE:  Thank you.

21           THE COURT:  Thank you.

22           MR. HENSLEE:  Before you read it in full, I'll just say

23   that, you know, sentencings, from my point of view, are always

24   much more difficult to do after a trial because, you know, my

25   client clearly has pled not guilty and, you know, had his trial,

1    and yet.  So I would just say some of that letter addresses some,

2    some injustices he perceived, you know, during the trial.  But

3    most of it is just sort of addressing you.  If you have a chance,

4    read that.

5                    THE COURT:  Certainly.

6                    (Pause in proceedings.)

7                    THE COURT:  All right.  Thank you.

8                    MR. HENSLEE:  Your Honor, I would just ask you also to

9    take note of the many friends and family that have come here to

10   support Mr. Wells.  I venture to guess almost everyone that's in

11   here is supporting him, family, friends, girlfriend, long-time

12   girlfriend.  It's probably just proof of the value that I spoke

13   about, that he provides to his family and to his community, the

14   fact that they're here to support him.  You know, it's a

15   difficult day for them and for him, of course.

16                    And Mr. Wells has informed me that other than the

17   comments he made in the letter, he doesn't have anything that he

18   want to say to you directly.  I would just ask that you consider

19   all of what I've said in deciding what his sentence should be,

20   whether a variance should apply here and whether you should go

21   below what, now that he's been found to be a career offender,

22   what his guidelines would say.  I think that would be unjust.

23   And I think, for the reasons I've told you, a sentence below that

24   would be appropriate.

25                    THE COURT:  Okay.

1          MR. WISE:  Your Honor, just briefly.  The only issue I

2     wanted to address, just for record purposes, is the issue of plea

3     negotiations.  We did engage in plea negotiations.  We don't make

4     a formal offer in every case.  That's simply not what the law

5     requires, nor would it be a good use of the time of attorneys for

6     either side.  What did happen in this case, as in many cases, is

7     where there is an interest there were plea discussions.  Those

8     were not -- the parties were quite far apart and those were

9     unsuccessful.  So while a formal written offer was not tendered,

10    there were negotiations, and the parties simply were too far

11    apart.

12          And as I think was sort of conceded, the lateness of

13    the negotiations was in part, not in part, was largely because

14    Mr. Wells was a fugitive and was not apprehended until, until the

15    time he was apprehended, in terms of being relatively close to

16    trial, compared to the other defendants who had been arrested and

17    incarcerated.

18          THE COURT:  Okay.  Okay.  Let me ask one other thing.

19    Mr. Henslee, were there any particular recommendations to the

20    Bureau of Prisons that your client would like?

21          MR. HENSLEE:  Only that, as Mr. Wells indicated to Ms.

22    Urban and as in the report, is that, you know, he does concede

23    that there was substance abuse going on in his past.  So he is

24    interested in some sort of treatment for those issues.  And also

25    just that I'm sure his family would want, and he would want, to

1       be as close as possible.  He has a daughter here in Baltimore,

2       and many, many family members and friends.  So I'm sure he'd

3       rather be somewhere near than far away.

4                    THE COURT:  Sure.

5                    MR. HENSLEE:  Those are the only things.

6                    THE COURT:  Okay.  All right.  Well, thank you all.

7       I'm going to take just about a 10-minute recess, and I'll come

8       out.

9                    (Recess at 9:57 a.m. Resume at 10:09 a.m.)

10                   THE COURT:  Well, thank you all.  Thank the probation

11      officer for the Presentence Report, and counsel for the memoranda

12      and the letters and the presentations today.

13                   Obviously, there are a number of factors to consider

14      under 3553(a), starting with the nature and circumstances of the

15      offense.  This is an extremely serious offense.  Mr. Wells was

16      involved in a very substantial drug conspiracy.  He was part of

17      that.  I understand that he was not the organizer, he was not the

18      leader, he was not involved for the entire time period.  But he

19      clearly was involved in a significant way.  Again, if I were

20      calculating those guidelines, but just as a factual matter, I

21      think certainly at least one to three kilos of heroin was

22      foreseeable to him based on the evidence that I heard at the

23      trial.

24                   He was a supplier.  Again, not saying he was the only

25      one.  But he was a supplier, at least at times, during this

1    conspiracy.

2         He brought his relationship with the police officer,

3    former police officer Gondo, into this conspiracy.  Then others

4    in the conspiracy took advantage of it.

5         And very significant is his involvement in the armed

6    home invasion of Mr. Anderson.  I recognize and appreciate that

7    I'm sure he, he hoped, as the others did, that it would be a

8    breaking in and nobody would be there, but it's certainly

9    foreseeable when you undertake something like that that a gun

10   will be, will be necessary.  And that is what happened.  So

11   that's a very significant incident just in itself.

12        Now, Mr. Wells, people are normally not all good and

13   not all bad.  Obviously, I appreciate that Mr. Wells plays a very

14   helpful role in his family, with his daughter, his mother.  And

15   I'm sure he appreciates having the support of all the people that

16   are here and that wrote letters for him.  But I think we have to

17   remember that heroin kills people.  Heroin destroys other

18   people's families.  It is not an excuse to harm other people's

19   families in order to support or take care of your own.  So we

20   still need serious consequences for serious crime.

21        I've read Mr. Wells' letter.  Again, I appreciate the

22   part in which he expresses his devotion to his family, his

23   concern for his family.  I appreciate that.

24        To the extent that Mr. Wells complains that there was

25   not sufficient credible evidence against him or that he didn't

1   have sufficient time to prepare for the trial, I strongly

2   disagree.  The government brought many, many witnesses, in

3   addition to the wiretaps and the recorded calls and everything

4   else into this case.  I would say the evidence was overwhelming

5   as to Mr. Wells' involvement.

6          To the extent he might have liked more time before the

7   trial, his own fugitive status contributed to that.  But in any

8   event, it's quite clear to me that he had sufficient time to

9   prepare.  He was well defended by Mr. Henslee.  The evidence was

10  simply overwhelming.

11         I understand that he, obviously, he has the absolute

12  right to choose to go to trial and put the government to its

13  proof.  That's his right.  But then he is not going to get credit

14  for accepting responsibility, which he clearly has not done.

15         There is also a factor to consider of relative

16  culpability, what is Mr. Wells' role in this offense and how does

17  that compare to the sentences of others.  I am -- before I get to

18  that, let me also comment on criminal history.

19         The career offender status itself leads to a very high

20  guideline.  And I agree with Mr. Henslee, appears with the

21  government as well, the career offender status, while I believe

22  it does apply, it's based on two fairly old marijuana

23  convictions.  And I think that a sentence below what would

24  otherwise be the career offender guidelines is sufficient in this

25  case.

1          Comparing his role in the offense, again, to the

2     sentences of others, I agree with the government.  I think that

3     Mr. Wells, again, had a very significant and somewhat distinct

4     role, for all the reasons that I've mentioned.  He was not the

5     leader or organizer, like Mr. Shropshire.  He did not have the

6     perhaps extensive involvement in distribution that Mr. Campbell

7     did, but he had the other roles that he played, the other things

8     that he was involved in.

9          I think it was a very fair and reasonable sentence for

10    all those, considering all the factors, to impose a sentence of,

11    which I am, of 188 months in the Bureau of Prisons on Count One

12    as to Mr. Wells.  I certainly will recommend to the Bureau of

13    Prisons that he be sentenced to a facility as close to Baltimore

14    as possible, consistent with his security level, so he can be

15    close to his family.

16         I'm going to recommend that he participate in any

17    substance abuse programs he's eligible for.  I think there's an

18    issue with substance and alcohol abuse.

19         Mr. Wells' financial circumstances don't permit a fine.

20    There's not going to be a fine.  There is a required $100 special

21    assessment.

22         The period of incarceration is going to be followed by

23    five years of supervised release.  That is also going to be very

24    important to Mr. Wells.  I hope, frankly, it will be a help

25    because I would like to believe that he would want to support his

1    family legitimately once he is released.

2            Special conditions of supervised release will include

3    participating in any substance or alcohol abuse programs the

4    probation officer recommends, and any vocational or educational

5    programs the probation officer recommends.

6            I think that's a reasonable sentence.  Is there

7    anything I have left out, anything I have not addressed?

8            MR. WISE:  Not on behalf of the government.

9            THE COURT:  Anything to dismiss?

10           MR. WISE:  No.  He was only charged in the third

11   superseding indictment.

12           MR. HENSLEE:  The only thing I would add, just while

13   you were taking your break, my client indicated he did wish me to

14   ask that you make a Schuylkill recommendation, to that particular

15   facility.  I'm sorry for the lateness of that.  He asked for

16   that.

17           THE COURT:  Sure.  No problem.  I'll be happy to make

18   that recommendation.  As you know, it's up to the Bureau of

19   Prisons.  But I'm happy to make that recommendation.

20           MR. HENSLEE:  Thank you.

21           THE COURT:  All right.  As I'm sure you're aware, Mr.

22   Wells, you have a right to appeal from both the verdict and the

23   sentence.  And you can talk to your lawyer about that.  But the

24   appeal would need to be noted within 14 days.  You understand

25   that, sir?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  All right.  Thank you all.

3          (Conclusion of Proceedings at 10:17 a.m.)

1                        REPORTER'S CERTIFICATE

2

3          I, Mary M. Zajac, do hereby certify that I recorded

4    stenographically the proceedings in the matter of USA v. Glen

5    Kyle Wells, Case Number(s) CCB-16-051, on February 22, 2018.

6          I further certify that the foregoing pages constitute

7    the official transcript of proceedings as transcribed by me to

8    the within matter in a complete and accurate manner.

9          In Witness Whereof, I have hereunto affixed my

10   signature this _____ day of _____, 2018.

11

12

13

14          _____

              Mary M. Zajac,
15            Official Court Reporter

16

17

18

19

20

21

22

23

24

25

## $

**$100** [1] - 25:20

## 1

**10-minute** [1] - 22:7
**101** [1] - 1:23
**10:09** [1] - 22:9
**10:17** [1] - 27:3
**12/30** [1] - 7:15
**120** [1] - 11:1
**14** [2] - 3:16, 26:24
**140** [1] - 13:25
**150** [1] - 11:1
**16-51-CCB** [1] - 2:3
**168** [1] - 13:25
**17** [1] - 16:2
**175** [1] - 13:25
**18** [2] - 15:3, 16:2
**188** [2] - 11:24, 25:11
**1st** [1] - 7:17

## 2

**2-B** [1] - 7:8
**20** [1] - 11:2
**2006** [1] - 12:20
**2009** [1] - 12:20
**2015** [1] - 7:10
**2016** [1] - 7:17
**2018** [3] - 1:10, 28:5, 28:10
**210** [1] - 13:25
**21201** [1] - 1:24
**22** [2] - 1:10, 28:5
**25** [2] - 5:7, 5:8
**26** [1] - 11:4
**262** [1] - 3:23
**27** [2] - 5:8, 5:9
**28** [4] - 13:17, 13:24, 14:8, 15:17

## 3

**30** [3] - 13:19, 13:25, 15:25
**30th** [1] - 7:10
**327** [1] - 3:23
**34** [2] - 3:22, 5:17
**3553(a** [2] - 6:3, 22:14
**3553(a)** [1] - 5:21

## 4

**40** [1] - 7:22

## 45

**45** [1] - 7:22

## 6

**65** [1] - 7:13

## 7

**700** [1] - 13:18

## 8

**800** [1] - 10:16

## 9

**9:24** [1] - 2:1
**9:57** [1] - 22:9

## A

**a.m** [4] - 2:1, 22:9, 27:3
**able** [2] - 9:15, 10:15
**absolute** [1] - 24:11
**abuse** [4] - 21:23, 25:17, 25:18, 26:3
**academic** [1] - 4:5
**accepting** [1] - 24:14
**accomplish** [1] - 10:7
**accomplished** [2] - 5:11, 18:16
**account** [1] - 5:22
**accurate** [1] - 28:8
**Act** [3] - 10:23, 10:24, 11:2
**act** [1] - 18:15
**active** [1] - 11:21
**add** [3] - 3:4, 4:17, 26:12
**addition** [1] - 24:3
**additional** [4] - 4:4, 11:2, 11:3, 13:20
**additions** [2] - 2:21, 3:3
**address** [3] - 4:6, 6:2, 21:2
**addressed** [1] - 26:7
**addresses** [1] - 20:1
**addressing** [1] - 20:3
**adjusted** [1] - 11:4
**adjustments** [1] - 14:9
**advantage** [1] - 23:4
**affected** [1] - 5:22
**affixed** [1] - 28:9
**ago** [1] - 17:20
**agree** [6] - 14:6, 14:20, 14:22, 16:1, 24:20, 25:2

**ahead** [1] - 4:7
**alcohol** [2] - 25:18, 26:3
**almost** [3] - 15:3, 17:4, 20:10
**alternatively** [1] - 13:13
**Alzheimer's** [1] - 18:2
**AMERICA** [1] - 1:4
**America** [1] - 2:2
**amount** [3] - 13:20, 15:8, 15:18
**Anderson** [2] - 10:3, 23:6
**Anderson's** [2] - 10:6, 10:21
**announce** [1] - 5:21
**anyway** [2] - 13:23, 14:21
**apart** [2] - 21:8, 21:11
**apologize** [1] - 19:16
**appeal** [2] - 26:22, 26:24
**Appearances** [1] - 1:15
**applied** [1] - 13:3
**apply** [2] - 20:20, 24:22
**appreciate** [5] - 12:2, 23:6, 23:13, 23:21, 23:23
**appreciated** [1] - 18:18
**appreciates** [1] - 23:15
**apprehended** [2] - 21:14, 21:15
**approach** [2] - 10:5, 19:18
**appropriate** [4] - 11:9, 11:11, 19:14, 20:24
**appropriately** [1] - 4:15
**apt** [1] - 6:13
**argue** [2] - 6:13, 12:6
**arguing** [1] - 13:8
**argument** [4] - 4:13, 4:17, 4:19, 5:10
**arguments** [4] - 3:7, 12:13, 14:8, 14:13
**armed** [4] - 9:25, 10:13, 11:21, 23:5
**arrested** [4] - 7:18, 7:19, 16:17, 21:16
**assessment** [1] - 25:21
**assets** [1] - 11:18
**assuming** [1] - 5:11
**athlete** [1] - 18:16
**athletic** [1] - 18:15
**athletics** [1] - 18:18
**attached** [2] - 2:17, 16:20
**attempting** [2] - 9:12, 9:19
**attorneys** [1] - 21:5
**attribute** [1] - 15:3
**audio** [1] - 7:9

**aunt** [2] - 17:6, 17:7
**avoid** [1] - 11:25
**aware** [2] - 2:17, 26:21

## B

**bad** [3] - 16:12, 19:5, 23:13
**balance** [1] - 11:23
**balancing** [1] - 11:17
**Baltimore** [5] - 1:11, 1:24, 2:6, 22:1, 25:13
**base** [4] - 11:2, 11:4, 14:7, 15:17
**based** [5] - 3:16, 12:19, 14:7, 22:22, 24:22
**basis** [2] - 17:5, 18:5
**basketball** [1] - 18:17
**began** [1] - 9:11
**behalf** [2] - 2:10, 26:8
**Behalf** [2] - 1:16, 1:18
**below** [6] - 6:14, 12:13, 13:3, 20:21, 20:23, 24:23
**between** [3] - 7:16, 8:16, 8:17
**beyond** [2] - 13:20, 15:19
**big** [1] - 17:21
**bit** [1] - 18:25
**Blake** [1] - 1:12
**bought** [4] - 6:24, 6:25, 12:8, 12:11
**BPD** [2] - 9:10, 9:11
**brandished** [2] - 10:14, 11:2
**break** [2] - 9:12, 26:13
**breaking** [1] - 23:8
**brief** [1] - 4:20
**briefed** [1] - 4:18
**briefly** [1] - 21:1
**Brill** [1] - 6:15
**broader** [1] - 9:9
**brought** [4] - 9:3, 11:18, 23:2, 24:2
**Bureau** [4] - 21:20, 25:11, 25:12, 26:18
**burglary** [1] - 10:12

## C

**calculating** [1] - 22:20
**calculation** [2] - 3:11, 11:1
**Campbell** [8] - 7:12, 7:16, 7:17, 7:19, 11:11, 11:12, 11:14, 25:6
**capture** [1] - 16:16
**car** [1] - 8:22

**care** [2] - 18:2, 23:19
**cared** [1] - 18:5
**career** [19] - 3:15, 3:21, 3:22, 4:3, 4:6, 4:11, 4:15, 5:16, 5:23, 11:7, 12:14, 12:19, 12:23, 13:5, 20:21, 24:19, 24:21, 24:24
**cares** [1] - 17:16
**Case** [1] - 28:5
**CASE** [1] - 1:5
**case** [16] - 2:2, 4:14, 5:12, 8:9, 9:10, 9:11, 10:23, 10:24, 14:23, 16:4, 17:18, 21:4, 21:6, 24:4, 24:25
**cases** [3] - 12:24, 19:1, 21:6
**cash** [1] - 10:17
**category** [2] - 5:18, 13:22
**Category** [3] - 3:16, 3:23, 13:25
**Catherine** [1] - 1:12
**CCB-16-051** [2] - 1:6, 28:5
**CDS** [2] - 4:10, 5:9
**CDS-related** [1] - 4:10
**certain** [1] - 6:12
**certainly** [13] - 6:16, 12:9, 14:6, 14:8, 14:25, 15:6, 16:7, 16:23, 17:12, 20:5, 22:21, 23:8, 25:12
**CERTIFICATE** [1] - 28:1
**certify** [2] - 28:3, 28:6
**chance** [2] - 2:25, 20:3
**changes** [1] - 3:9
**character** [1] - 16:25
**charged** [1] - 26:10
**children** [1] - 18:14
**choose** [1] - 24:12
**Circuit** [1] - 14:23
**circumstances** [3] - 4:14, 22:14, 25:19
**clear** [5] - 3:5, 5:9, 7:25, 13:4, 24:8
**clearly** [9] - 6:13, 7:25, 13:7, 18:20, 19:9, 19:10, 19:25, 22:19, 24:14
**client** [10] - 2:24, 12:8, 14:16, 15:14, 15:20, 16:10, 17:14, 19:25, 21:20, 26:13
**close** [4] - 21:15, 22:1, 25:13, 25:15
**coach** [2] - 18:15, 18:23
**cocaine** [2] - 12:25, 13:7
**collection** [1] - 6:12
**comfort** [1] - 18:10

**comment** [1] - 24:18
**comments** [1] - 20:17
**community** [4] - 18:11, 18:14, 19:9, 20:13
**comparable** [1] - 11:24
**compare** [1] - 24:17
**compared** [1] - 21:16
**comparing** [1] - 25:1
**compelling** [1] - 10:10
**complains** [1] - 23:24
**complete** [1] - 28:8
**completely** [2] - 7:1, 14:15
**compressed** [1] - 16:11
**concede** [3] - 13:17, 14:10, 21:22
**conceded** [1] - 21:12
**conceivable** [1] - 12:9
**concern** [2] - 8:22, 23:23
**conclusion** [2] - 17:18, 27:3
**conditions** [1] - 26:2
**conduct** [2] - 6:5, 6:17
**confirmed** [1] - 9:21
**consequences** [1] - 23:20
**consider** [5] - 13:2, 13:9, 20:18, 22:13, 24:15
**considered** [1] - 19:13
**considering** [1] - 25:10
**considers** [1] - 11:12
**consistent** [1] - 25:14
**conspiracy** [18] - 2:14, 5:3, 5:5, 6:4, 7:5, 7:7, 7:18, 7:24, 8:2, 8:5, 8:9, 9:4, 10:20, 11:7, 22:16, 23:1, 23:3, 23:4
**conspiracy/possess** [1] - 4:25
**constitute** [1] - 28:6
**contact** [6] - 7:2, 7:3, 8:4, 9:20, 11:14, 11:16
**context** [1] - 6:3
**contributed** [1] - 24:7
**contribution** [1] - 18:15
**controlled** [2] - 4:9, 5:6
**conversation** [2] - 7:16, 17:13
**convicted** [1] - 4:25
**conviction** [1] - 2:14
**convictions** [4] - 4:10, 12:20, 13:12, 24:23
**cooperate** [1] - 16:8
**copy** [1] - 19:16
**copycatting** [1] - 11:10
**Corporal** [1] - 2:5
**corrections** [2] - 2:21, 3:3

**corruption** [1] - 9:11
**counsel** [2] - 2:4, 22:11
**Count** [2] - 2:14, 25:11
**country** [2] - 13:4, 13:6
**County** [2] - 2:5, 2:6
**couple** [2] - 3:12, 17:24
**course** [7] - 9:21, 9:24, 10:9, 11:6, 15:14, 19:19, 20:15
**COURT** [32] - 1:1, 2:8, 2:12, 2:23, 3:2, 3:10, 4:7, 4:16, 4:20, 6:7, 12:2, 12:17, 13:10, 13:13, 14:11, 14:17, 14:20, 15:21, 16:21, 19:19, 19:21, 20:5, 20:7, 20:25, 21:18, 22:4, 22:6, 22:10, 26:9, 26:17, 26:21, 27:2
**Court** [6] - 6:5, 11:25, 13:1, 13:8, 19:13, 28:15
**Courthouse** [1] - 1:23
**cousins** [2] - 10:11, 10:13
**credible** [1] - 23:25
**credit** [1] - 24:13
**crime** [2] - 19:5, 23:20
**crimes** [1] - 4:22
**CRIMINAL** [1] - 1:5
**Criminal** [4] - 2:3, 3:16, 3:23, 13:24
**criminal** [7] - 3:14, 5:17, 6:17, 10:25, 11:5, 13:22, 24:18
**culpability** [1] - 24:16
**customer** [2] - 8:4, 11:14, 11:16
**customers** [4] - 6:23, 7:2, 7:3, 11:15

**D**

**daily** [2] - 17:5, 18:5
**dangerous** [1] - 4:9
**daughter** [6] - 17:3, 17:5, 17:11, 17:15, 22:1, 23:14
**David** [1] - 2:5
**day-to-day** [1] - 11:13
**days** [3] - 7:14, 7:15, 26:24
**DEA** [1] - 8:20
**dealer** [2] - 10:3, 11:21
**December** [1] - 17:6
**deciding** [2] - 19:14, 20:19
**deck** [1] - 7:21
**declining** [1] - 18:1
**dedicated** [1] - 19:5

**DEFENDANT** [1] - 27:1
**Defendant** [2] - 1:7, 1:18
**defendants** [3] - 6:18, 7:2, 21:16
**defended** [1] - 24:9
**Defender's** [1] - 4:13
**definitely** [1] - 14:13
**definition** [1] - 5:2
**degree** [2] - 12:12, 17:22
**demonstrable** [1] - 11:13
**Department** [1] - 2:7
**Derek** [2] - 1:17, 2:3
**describe** [1] - 6:13
**describes** [2] - 7:13, 7:20
**describing** [1] - 7:19
**despite** [1] - 10:12
**destroys** [1] - 23:17
**detect** [1] - 9:8
**Detective** [11] - 2:6, 8:13, 8:14, 8:20, 8:21, 8:22, 8:24, 15:7, 15:8
**determination** [1] - 6:6
**determined** [1] - 4:15
**determining** [2] - 13:2, 13:9
**device** [1] - 8:20
**devoted** [2] - 17:4, 17:15, 18:4
**devotion** [1] - 23:22
**died** [1] - 17:20
**difference** [1] - 12:24
**different** [1] - 5:23
**differently** [1] - 13:6
**difficult** [2] - 19:24, 20:15
**direct** [3] - 7:2, 8:4, 13:20
**direct-to-customer** [1] - 8:4
**directly** [3] - 6:23, 6:25, 20:18
**director** [1] - 14:16
**disagree** [3] - 3:7, 4:21, 24:2
**disagreement** [2] - 12:5, 14:24
**discovered** [1] - 8:20
**discussed** [1] - 7:11
**discussion** [1] - 16:7
**discussions** [1] - 21:7
**dismiss** [1] - 26:9
**disparities** [1] - 11:25
**disputed** [1] - 4:4
**disputes** [1] - 6:2
**distinct** [1] - 25:3

**distribute** [6] - 2:15, 5:1, 5:4, 5:9, 5:10, 12:21
**distribution** [3] - 5:14, 12:22, 25:6
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**done** [1] - 24:14
**doubt** [1] - 15:19
**down** [2] - 12:9, 15:18
**drug** [6] - 9:13, 10:3, 11:21, 12:24, 13:11, 22:16
**drugs** [4] - 3:19, 5:4, 5:15, 15:18
**duration** [1] - 7:23
**during** [3] - 15:9, 20:2, 22:25

**E**

**early** [2] - 9:19, 18:2
**easier** [1] - 11:13, 18:7
**educational** [1] - 26:4
**efficient** [1] - 6:1
**efforts** [1] - 10:12
**egregious** [1] - 11:20
**either** [3] - 12:10, 14:1, 21:6
**elaborate** [1] - 4:17
**eligible** [1] - 25:17
**emerged** [1] - 9:21
**ended** [1] - 15:2
**enduring** [1] - 8:17
**enforcement** [6] - 8:23, 9:2, 9:7, 9:12, 9:15, 9:17
**engage** [2] - 16:5, 21:3
**engaged** [1] - 6:18
**entire** [2] - 15:13, 22:18
**episode** [1] - 9:25
**equals** [2] - 6:12
**Esquire** [3] - 1:16, 1:17, 1:18
**essentially** [2] - 15:14, 19:4
**established** [1] - 8:14
**evade** [2] - 9:2, 9:15
**evading** [1] - 16:16
**event** [1] - 24:8
**evidence** [13] - 7:3, 8:2, 8:24, 11:17, 13:19, 14:15, 15:5, 15:6, 15:10, 22:22, 23:25, 24:4, 24:9
**exception** [1] - 6:14
**excuse** [1] - 23:18
**Exhibit** [1] - 7:8
**expresses** [1] - 23:22
**extensive** [1] - 25:6
**extent** [3] - 6:12, 23:24, 24:6

**extremely** [1] - 22:15

**F**

**facility** [2] - 25:13, 26:15
**fact** [4] - 5:4, 10:13, 11:20, 20:14
**factor** [1] - 24:15
**factors** [3] - 4:5, 22:13, 25:10
**facts** [5] - 3:6, 3:8, 14:18, 15:1, 15:13
**factual** [3] - 6:2, 14:24, 22:20
**fair** [1] - 25:9
**fairly** [3] - 12:5, 18:16, 24:22
**families** [2] - 23:18, 23:19
**family** [15] - 17:22, 18:4, 18:9, 18:10, 19:10, 20:9, 20:11, 20:13, 21:25, 22:2, 23:14, 23:22, 23:23, 25:15, 26:1
**family's** [1] - 18:11
**far** [4] - 3:14, 21:8, 21:10, 22:3
**father** [6] - 17:4, 17:7, 17:8, 17:11, 17:15, 17:20
**fault** [1] - 16:16
**FCRR** [1] - 1:22
**features** [1] - 8:12
**February** [2] - 1:10, 28:5
**Federal** [1] - 4:13
**felony** [3] - 4:10, 5:13, 12:20
**felt** [2] - 9:6, 15:18
**few** [3] - 7:14, 7:15, 18:1
**figure** [1] - 6:19
**filed** [1] - 2:16
**final** [2] - 13:14, 14:3
**financial** [1] - 25:19
**fine** [2] - 25:19, 25:20
**firearm** [6] - 3:20, 10:14, 10:16, 11:2, 11:3, 14:2
**first** [5] - 4:6, 7:9, 7:18, 8:22, 17:2
**fits** [1] - 5:1
**five** [5] - 11:3, 14:16, 25:23
**Floor** [1] - 1:23
**followed** [1] - 25:22
**following** [1] - 2:13
**foot** [2] - 19:7
**football** [1] - 18:16

**FOR** [1] - 1:1
**foregoing** [1] - 28:6
**foreseeability** [1] - 15:24
**foreseeable** [4] - 13:21, 15:20, 22:22, 23:9
**formal** [2] - 21:4, 21:9
**former** [3] - 8:24, 15:7, 23:3
**Fourth** [2] - 1:23, 14:22
**frankly** [6] - 12:7, 13:19, 15:14, 17:21, 17:25, 25:24
**friend** [3] - 18:13, 18:21, 18:22
**friends** [3] - 20:9, 20:11, 22:2
**fugitive** [2] - 21:14, 24:7
**full** [1] - 19:22

## G

**general** [1] - 18:9
**genesis** [1] - 10:2
**girlfriend** [2] - 20:11, 20:12
**given** [3] - 7:13, 11:25, 19:16
**GLEN** [1] - 1:6
**Glen** [2] - 2:3, 28:4
**golf** [1] - 18:16
**Gondo** [15] - 8:13, 8:14, 8:16, 8:17, 8:20, 8:21, 8:22, 8:24, 9:6, 9:20, 9:23, 10:18, 11:19, 15:7, 15:8, 23:3
**Gondo's** [2] - 9:22, 10:5
**Government** [2] - 1:16, 7:8
**government** [18] - 2:21, 3:6, 3:12, 3:25, 13:23, 14:8, 14:12, 14:21, 14:25, 15:19, 16:6, 16:15, 19:16, 24:2, 24:12, 24:21, 25:2, 26:8
**government's** [2] - 15:11, 16:24
**GPS** [1] - 10:6
**grams** [2] - 10:16, 13:18
**group** [1] - 6:19
**GTTF** [1] - 8:25
**guess** [2] - 14:20, 20:10
**guideline** [6] - 3:2, 3:11, 4:4, 6:2, 11:8, 24:20
**guidelines** [14] - 2:18, 3:7, 5:2, 5:13, 5:20, 5:22, 10:24, 11:7, 12:13, 13:15, 14:4, 20:22,

22:20, 24:24
**guilty** [2] - 5:2, 19:25
**gun** [1] - 23:9

## H

**hand** [1] - 6:22
**happy** [2] - 26:17, 26:19
**Harford** [1] - 2:5
**harm** [1] - 23:18
**health** [1] - 18:1
**hear** [1] - 6:8
**heard** [7] - 5:19, 6:17, 6:22, 7:10, 10:1, 22:22
**help** [4] - 9:7, 18:6, 18:23, 25:24
**helpful** [1] - 23:14
**HENSLEE** [20] - 2:9, 3:1, 3:4, 4:18, 12:4, 12:18, 13:11, 14:6, 14:12, 14:18, 14:24, 16:3, 16:22, 19:20, 19:22, 20:8, 21:21, 22:5, 26:12, 26:20
**Henslee** [10] - 1:18, 2:10, 2:16, 2:23, 4:12, 4:16, 12:3, 21:19, 24:9, 24:20
**Henslee's** [1] - 5:10
**hereby** [1] - 28:3
**hereunto** [1] - 28:9
**heroin** [15] - 2:15, 5:1, 6:25, 7:14, 8:1, 10:16, 11:6, 12:25, 13:7, 15:4, 15:8, 22:21, 23:17
**hierarchical** [2] - 6:20, 8:6
**high** [2] - 11:8, 24:19
**Hines** [4] - 1:17, 2:4, 6:24, 12:6
**history** [6] - 3:14, 5:17, 10:25, 11:5, 13:22, 24:18
**History** [3] - 3:16, 3:23, 13:24
**Hobbs** [3] - 10:23, 10:24, 11:1
**holistically** [1] - 6:4
**home** [5] - 9:25, 10:7, 10:13, 15:9, 23:6
**honor** [1] - 17:10
**Honor** [20] - 2:7, 2:9, 2:22, 4:2, 4:8, 5:25, 6:10, 6:22, 7:6, 7:11, 8:19, 8:23, 9:9, 10:1, 11:11, 12:1, 12:4, 20:8, 21:1
**Honorable** [1] - 1:12
**hope** [1] - 25:24
**hoped** [1] - 23:7

**hospital** [1] - 15:15
**house** [1] - 10:21

## I

**identified** [1] - 7:7
**illegal** [1] - 10:5
**immediately** [1] - 10:18
**impact** [1] - 17:21
**important** [1] - 25:24
**impose** [1] - 25:10
**imposed** [1] - 11:25
**IN** [1] - 1:1
**incarcerated** [2] - 15:15, 21:17
**incarceration** [1] - 25:22
**incident** [1] - 23:11
**include** [1] - 26:2
**incorporate** [1] - 5:20
**indicated** [4] - 4:2, 15:16, 21:21, 26:13
**indictment** [1] - 26:11
**individual** [1] - 6:5
**influence** [1] - 10:4
**information** [3] - 8:25, 9:2, 10:20
**informed** [1] - 20:16
**injustices** [1] - 20:2
**instance** [1] - 8:25
**intend** [1] - 5:21
**intent** [4] - 2:14, 5:1, 5:8, 12:21
**interest** [1] - 21:7
**interested** [1] - 21:24
**interesting** [1] - 4:21
**introduced** [2] - 15:5, 15:6
**invasion** [4] - 10:1, 10:7, 15:9, 23:6
**involve** [1] - 5:14
**involved** [9] - 16:14, 17:8, 17:16, 17:17, 18:11, 22:16, 22:18, 22:19, 25:8
**involvement** [6] - 6:21, 16:4, 17:3, 23:5, 24:5, 25:6
**issue** [4] - 4:3, 21:1, 21:2, 25:18
**issues** [9] - 2:18, 3:2, 3:12, 3:18, 3:20, 4:22, 5:20, 6:2, 21:24
**itself** [2] - 23:11, 24:19

## J

**jail** [2] - 7:9, 7:10

**January** [1] - 7:16
**jewelry** [1] - 10:17
**joining** [1] - 5:3
**Judge** [1] - 1:12
**jury** [3] - 5:3, 6:17, 7:10
**jury's** [1] - 14:7

## K

**kids** [1] - 18:24
**kill** [1] - 10:3
**kills** [1] - 23:17
**kilo** [1] - 13:18
**kilograms** [1] - 15:3
**kilos** [2] - 16:2, 22:21
**Kilpatrick** [1] - 2:6
**kind** [5] - 6:11, 11:16, 13:22, 17:8, 19:8
**kinds** [1] - 6:17
**knowing** [1] - 5:3
**KYLE** [1] - 1:6
**Kyle** [2] - 2:3, 28:5

## L

**largely** [1] - 21:13
**larger** [1] - 11:6
**last** [1] - 18:1
**late** [1] - 16:4
**lateness** [2] - 21:12, 26:15
**law** [9] - 8:23, 9:2, 9:7, 9:11, 9:15, 9:17, 13:5, 14:23, 21:4
**lawyer** [1] - 26:23
**leader** [3] - 6:14, 22:18, 25:5
**leads** [1] - 24:19
**least** [9] - 6:2, 12:16, 13:19, 15:1, 15:23, 15:25, 16:7, 22:21, 22:25
**left** [1] - 26:7
**legally** [1] - 13:8
**legitimately** [1] - 26:1
**Leo** [2] - 1:16, 2:3
**less** [2] - 7:21, 7:22
**lessons** [1] - 17:9
**letter** [7] - 17:4, 18:12, 18:20, 19:15, 20:1, 20:17, 23:21
**letters** [9] - 2:17, 16:20, 17:1, 17:6, 17:12, 17:24, 18:8, 22:12, 23:16
**level** [7] - 3:19, 5:17, 11:4, 11:5, 14:7, 15:17, 25:14
**Level** [4] - 3:22, 13:17, 13:24, 15:25

**levels** [2] - 4:1, 14:1
**life** [7] - 17:9, 17:16, 17:17, 18:7, 18:11, 19:5
**likely** [1] - 14:1
**Lil** [1] - 6:15
**lines** [1] - 16:8
**located** [1] - 11:6
**location** [1] - 8:24
**Lombard** [1] - 1:23
**long-time** [1] - 20:11
**looked** [2] - 10:24, 12:8
**looking** [1] - 13:15
**Lou** [2] - 7:12, 8:10
**loves** [2] - 17:4, 17:15

## M

**manner** [1] - 28:8
**manufacture** [1] - 5:10
**marijuana** [6] - 5:9, 12:21, 12:22, 12:25, 13:6, 24:22
**Marnat** [2] - 10:1, 15:9
**Marshall** [2] - 1:18, 2:9
**Mary** [3] - 1:22, 28:3, 28:14
**MARYLAND** [1] - 1:1
**Maryland** [2] - 1:11, 1:24
**matter** [4] - 17:17, 22:20, 28:4, 28:8
**McDougall** [1] - 2:5
**mean** [5] - 4:3, 10:23, 13:15, 16:11, 16:13
**meaningful** [1] - 16:6
**member** [2] - 7:18, 10:19
**members** [7] - 7:7, 8:1, 8:5, 8:25, 9:5, 19:7, 22:2
**memoranda** [1] - 22:11
**memorandum** [5] - 2:16, 3:9, 4:12, 4:17, 16:22
**mentioned** [5] - 14:9, 17:2, 17:20, 17:21, 25:4
**might** [2] - 15:12, 24:6
**mind** [1] - 14:4
**minimum** [1] - 13:17
**minor** [1] - 12:5
**minute** [1] - 2:19
**missed** [1] - 12:10
**mistaken** [1] - 3:14
**moderating** [1] - 10:4
**modifications** [2] - 2:21, 3:3
**money** [1] - 10:21
**month** [1] - 3:23
**months** [3] - 11:1, 11:24, 25:11

**morning** [4] - 2:7, 2:8, 2:9, 19:16
**most** [4] - 6:1, 11:20, 13:5, 20:3
**mother** [4] - 17:25, 18:5, 18:9, 23:14
**movements** [1] - 10:7
**MR** [29] - 2:2, 2:9, 2:22, 3:1, 3:4, 4:2, 4:8, 4:18, 5:25, 6:10, 12:4, 12:18, 13:11, 14:6, 14:12, 14:18, 14:24, 16:3, 16:22, 19:20, 19:22, 20:8, 21:1, 21:21, 22:5, 26:8, 26:10, 26:12, 26:20
**must** [1] - 5:2

## N

**nature** [2] - 13:11, 22:14
**navigate** [1] - 9:7
**near** [1] - 22:3
**necessarily** [5] - 5:22, 6:19, 8:6, 9:10, 16:12
**necessary** [1] - 23:10
**need** [3] - 3:11, 23:20, 26:24
**negotiations** [5] - 16:6, 21:3, 21:10, 21:13
**never** [3] - 16:5, 16:9, 17:13
**nice** [1] - 2:11
**nickname** [1] - 7:12
**NO** [1] - 1:5
**nobody** [1] - 23:8
**nonetheless** [1] - 23:12
**normally** [1] - 23:12
**NORTHERN** [1] - 1:2
**note** [1] - 20:9
**noted** [2] - 3:8, 26:24
**notes** [1] - 12:8
**noteworthy** [1] - 16:3
**notion** [1] - 14:15
**Number** [1] - 2:3
**number** [3] - 2:17, 4:10, 22:13
**Number(s** [1] - 28:5
**numerous** [3] - 16:20, 17:12, 17:19

## O

**objective** [1] - 5:3
**obviously** [8] - 2:15, 4:8, 6:8, 11:7, 11:16, 22:13, 23:13, 24:11
**occurs** [1] - 13:14

**odds** [1] - 18:25
**OF** [2] - 1:1, 1:4
**offender** [19] - 3:15, 3:21, 3:22, 4:3, 4:4, 4:6, 4:11, 4:15, 5:16, 5:24, 11:7, 12:14, 12:19, 12:23, 13:5, 20:21, 24:19, 24:21, 24:24
**offense** [13] - 3:19, 4:1, 5:6, 5:13, 5:17, 11:4, 14:7, 15:17, 22:15, 24:16, 25:1
**Offense** [4] - 3:22, 13:17, 13:24, 15:25
**offenses** [4] - 4:11, 5:7, 5:14
**offer** [4] - 5:11, 16:10, 21:4, 21:9
**Office** [2] - 2:5, 4:14
**officer** [7] - 9:16, 15:2, 22:11, 23:2, 23:3, 26:4, 26:5
**official** [2] - 16:10, 28:7
**Official** [1] - 28:15
**often** [1] - 19:2
**old** [1] - 24:22
**once** [2] - 9:22, 26:1
**One** [2] - 2:14, 25:11
**one** [25] - 3:6, 6:22, 6:23, 8:13, 10:5, 10:7, 11:3, 11:6, 11:12, 11:15, 12:4, 12:5, 12:10, 12:20, 14:14, 17:6, 18:20, 19:7, 19:8, 21:18, 22:21, 22:25
**one-time** [1] - 11:6
**onset** [1] - 18:2
**opportunity** [3] - 16:5, 16:13, 16:19
**order** [1] - 23:19
**organization** [4] - 6:11, 9:13, 11:19, 15:13
**organizer** [3] - 14:16, 22:17, 25:5
**organizer/leader** [1] - 3:21
**original** [2] - 8:16, 9:17
**originally** [1] - 9:14
**otherwise** [1] - 24:24
**overwhelming** [2] - 24:4, 24:10
**own** [4] - 17:7, 17:8, 23:19, 24:7

## P

**pages** [1] - 28:6
**Paragraph** [2] - 5:8, 5:9
**Paragraphs** [1] - 5:7
**part** [6] - 15:15, 15:23,

21:13, 22:16, 23:22
**participant** [2] - 8:8, 11:22
**participate** [1] - 25:16
**participating** [1] - 26:3
**particular** [5] - 12:5, 15:18, 15:20, 21:19, 26:14
**particularized** [1] - 6:5
**parties** [2] - 21:8, 21:10
**pass** [3] - 17:9, 18:21, 19:18
**past** [1] - 21:23
**path** [1] - 18:25
**pause** [1] - 20:6
**people** [8] - 12:11, 14:16, 19:6, 19:9, 19:10, 23:12, 23:15, 23:17
**people's** [2] - 23:18
**perceived** [1] - 20:2
**perhaps** [3] - 7:6, 8:7, 25:6
**period** [3] - 9:13, 22:18, 25:22
**permit** [1] - 25:19
**person** [1] - 19:4
**phone** [2] - 9:20, 9:23
**piece** [1] - 10:17
**played** [2] - 18:16, 25:7
**plays** [1] - 23:13
**plea** [5] - 16:6, 16:10, 21:2, 21:3, 21:7
**pled** [1] - 19:25
**plus** [1] - 11:2
**point** [3] - 11:4, 14:22, 19:23
**points** [1] - 3:17
**Police** [1] - 2:6
**police** [3] - 9:16, 23:2, 23:3
**portion** [1] - 10:21
**possess** [1] - 2:14
**possession** [4] - 3:20, 5:8, 12:21, 14:2
**possible** [2] - 22:1, 25:14
**precisely** [1] - 9:15
**prepare** [2] - 24:1, 24:9
**presentations** [1] - 22:12
**Presentence** [6] - 2:15, 2:20, 2:24, 3:5, 15:2, 22:11
**presentencing** [1] - 17:25
**pressing** [2] - 12:16, 14:21
**pretty** [1] - 18:17
**Prisons** [4] - 21:20, 25:11, 25:13, 26:19

**proactively** [1] - 9:23
**probation** [4] - 15:2, 22:10, 26:4, 26:5
**problem** [1] - 26:17
**proceed** [4] - 3:13, 3:25, 6:1, 6:8
**proceedings** [4] - 2:1, 20:6, 28:4, 28:7
**Proceedings** [1] - 27:3
**proceeds** [1] - 10:22
**procure** [1] - 8:11
**productive** [1] - 19:6
**programs** [3] - 25:17, 26:3, 26:5
**proof** [2] - 20:12, 24:13
**protect** [1] - 9:1
**protected** [1] - 11:19
**protecting** [2] - 8:23, 9:16
**proved** [1] - 15:19
**provide** [2] - 7:21, 9:1
**provided** [4] - 3:6, 8:5, 10:20, 19:10
**provides** [1] - 20:13
**providing** [3] - 7:25, 8:24
**Public** [1] - 4:13
**punishment** [1] - 19:14
**purposes** [1] - 21:2
**put** [3] - 8:21, 11:15, 24:12

## Q

**qualifies** [1] - 13:7
**qualify** [2] - 4:11, 5:12
**quantity** [2] - 3:19, 10:16
**quickly** [1] - 10:15
**quite** [5] - 8:13, 12:15, 15:22, 21:8, 24:8

## R

**raised** [1] - 6:3
**range** [3] - 3:24, 11:8, 13:23
**rather** [1] - 22:3
**Rayam** [5] - 10:10, 10:14, 10:18, 15:7
**reach** [1] - 9:6
**reached** [1] - 8:19
**reaching** [2] - 9:1, 9:22
**read** [7] - 16:20, 16:23, 16:24, 17:24, 19:22, 20:4, 23:21
**real** [1] - 7:22
**realistically** [1] - 13:18

**realize** [1] - 12:23
**really** [6] - 15:3, 16:5, 16:9, 16:13, 17:5, 17:10
**realm** [1] - 5:5
**reasonable** [4] - 15:19, 15:24, 25:9, 26:6
**reasonably** [1] - 15:19
**reasons** [3] - 5:25, 20:23, 25:4
**recalled** [1] - 5:10
**recess** [2] - 22:7, 22:9
**recognize** [1] - 23:6
**recommend** [2] - 25:12, 25:16
**recommendation** [5] - 12:15, 12:16, 26:14, 26:18, 26:19
**recommendations** [1] - 21:19
**recommends** [2] - 26:4, 26:5
**record** [5] - 2:24, 3:16, 7:3, 8:2, 21:2
**recorded** [2] - 24:3, 28:3
**reference** [3] - 7:13, 7:21, 18:8
**referenced** [3] - 17:3, 17:7, 17:12
**references** [1] - 18:22
**referencing** [1] - 18:14
**referred** [1] - 6:15
**referring** [1] - 16:24
**reflect** [1] - 16:24
**related** [1] - 4:10
**relationship** [8] - 8:6, 8:13, 8:16, 8:17, 9:3, 9:24, 11:19, 23:2
**relative** [1] - 24:15
**relatively** [2] - 4:23, 21:15
**release** [2] - 25:23, 26:2
**released** [1] - 26:1
**remember** [2] - 12:7, 23:17
**reminding** [1] - 6:24
**repeated** [1] - 16:25
**Report** [6] - 2:16, 2:20, 2:24, 3:5, 15:2, 22:11
**report** [2] - 17:25, 21:22
**Reported** [1] - 1:22
**Reporter** [1] - 28:15
**REPORTER'S** [1] - 28:1
**required** [1] - 25:20
**requires** [2] - 18:2, 21:5
**requisite** [1] - 4:10
**reseller** [1] - 8:8
**resellers** [1] - 8:9
**resold** [1] - 8:1

**responsibility** [1] - 24:14
**responsible** [1] - 16:1
**rest** [3] - 4:19, 8:5, 8:9
**Resume** [1] - 22:9
**review** [2] - 2:25, 19:17
**reviewed** [2] - 2:15, 2:24
**rival** [2] - 10:3, 11:21
**Road** [2] - 10:1, 15:9
**robbery** [5] - 10:13, 10:23, 10:24, 11:6, 11:21
**Robert** [1] - 12:6
**role** [9] - 6:4, 6:16, 11:13, 11:18, 17:23, 23:14, 24:16, 25:1, 25:4
**roles** [1] - 25:7
**RPR** [1] - 1:22
**ruling** [4] - 5:23, 13:14, 14:3, 15:17

**S**

**sales** [1] - 13:21
**saw** [5] - 6:16, 7:6, 8:23, 9:20, 9:23
**scale** [1] - 11:16
**school** [1] - 18:24
**Schuylkill** [1] - 26:14
**Scott** [1] - 2:6
**seated** [1] - 2:12
**security** [1] - 25:14
**see** [5] - 2:11, 3:7, 3:11, 3:12, 12:9
**seized** [1] - 15:8
**sell** [1] - 5:11
**seller** [1] - 8:8
**semi** [1] - 6:12
**semi-equals** [1] - 6:12
**sense** [3] - 4:5, 6:20, 7:1
**sentence** [13] - 5:21, 11:9, 11:11, 11:12, 11:24, 11:25, 20:19, 20:23, 24:23, 25:9, 25:10, 26:6, 26:23
**sentenced** [1] - 25:13
**sentences** [3] - 13:9, 24:17, 25:2
**sentencing** [6] - 2:7, 2:13, 2:16, 4:12, 16:1, 16:22
**Sentencing** [1] - 1:10
**sentencings** [1] - 19:23
**serious** [5] - 5:14, 12:25, 22:15, 23:20
**seven** [1] - 15:14
**several** [3] - 17:2, 17:20, 18:1

**Sheriff's** - 2:5
**shows** [1] - 8:2
**Shropshire** [8] - 6:13, 6:16, 8:15, 8:19, 9:5, 9:13, 9:22, 25:5
**Shropshire's** [1] - 9:20
**side** [3] - 6:9, 11:15, 21:6
**signature** [1] - 28:10
**significant** [8] - 8:7, 8:8, 9:13, 10:15, 22:19, 23:5, 23:11, 25:3
**simply** [5] - 5:20, 11:10, 21:4, 21:10, 24:10
**situation** [1] - 19:3
**society** [1] - 19:7
**sometime** [1] - 15:23
**sometimes** [1] - 19:3
**somewhat** [3] - 4:5, 15:22, 25:3
**somewhere** [1] - 22:3
**son** [1] - 18:5
**sorry** [1] - 26:15
**sort** [20] - 4:5, 6:4, 10:18, 10:20, 11:10, 11:23, 12:15, 13:9, 13:13, 15:16, 16:4, 16:6, 16:9, 16:25, 17:18, 17:23, 19:7, 20:3, 21:12, 21:24
**source** [3] - 7:8, 7:24, 18:10
**speaking** [1] - 18:4
**special** [2] - 25:20, 26:2
**split** [1] - 10:18
**standard** [1] - 15:24
**start** [1] - 3:10
**starting** [2] - 3:19, 22:14
**statement** [2] - 15:1, 15:12
**STATES** [2] - 1:1, 1:4
**States** [2] - 2:2, 2:4
**status** [5] - 5:24, 12:23, 24:7, 24:19, 24:21
**statute** [1] - 13:7
**staying** [1] - 18:24
**steal** [1] - 10:15
**stenographically** [1] - 28:4
**step** [1] - 17:23
**still** [4] - 3:15, 5:12, 10:25, 23:20
**stolen** [1] - 11:3
**story** [1] - 9:9
**straightforward** [1] - 4:24
**Street** [1] - 1:23
**strokes** [1] - 18:1
**strongly** [1] - 24:1

**struck** [1] - 18:12
**stumbled** [1] - 9:17
**submitted** [1] - 4:12
**substance** [7] - 4:9, 5:6, 5:13, 21:23, 25:17, 25:18, 26:3
**substantial** [2] - 10:25, 22:16
**substantive** [1] - 6:21
**substantively** [1] - 6:20
**subsumed** [1] - 6:16
**sufficient** [5] - 5:12, 23:25, 24:1, 24:8, 24:24
**suggest** [2] - 6:16, 13:13
**suggesting** [1] - 13:23
**suggestion** [1] - 10:2
**summary** [1] - 3:5
**superseding** [1] - 26:11
**supervised** [2] - 25:23, 26:2
**supplied** [3] - 7:20, 15:1, 18:6
**supplier** [7] - 8:7, 11:18, 13:20, 15:13, 15:24, 22:24, 22:25
**supply** [5] - 7:8, 7:20, 7:24, 8:5, 8:10
**support** [5] - 20:10, 20:14, 23:15, 23:19, 25:25
**supported** [3] - 14:19, 14:23, 15:5
**supporting** [1] - 20:11
**suppose** [2] - 12:14, 15:11
**surveilling** [1] - 9:12

**T**

**table** [2] - 2:4, 2:11
**tap** [1] - 9:20
**Taylor** [2] - 6:24, 12:6
**tendered** [1] - 21:9
**terms** [3] - 6:20, 11:18, 21:15
**testified** [1] - 8:22
**testimony** [6] - 7:4, 7:12, 8:14, 10:1, 10:10, 10:19
**THE** [34] - 1:1, 1:1, 2:8, 2:12, 2:23, 3:2, 3:10, 4:7, 4:16, 4:20, 6:7, 12:2, 12:17, 13:10, 13:13, 14:11, 14:17, 14:20, 15:21, 16:21, 19:19, 19:21, 20:5, 20:7, 20:25, 21:18, 22:4, 22:6, 22:10, 26:9, 26:17,

26:21, 27:1, 27:2
**theory** [4] - 4:21, 9:14, 15:11
**therefore** [1] - 5:17
**thesis** [1] - 9:18
**thinks** [1] - 13:6
**third** [1] - 26:10
**Thomas** [1] - 6:15
**threat** [2] - 3:20, 14:1
**threatened** [1] - 10:14
**three** [1] - 22:21
**Thursday** [1] - 1:10
**time-wise** [1] - 16:11
**today** [1] - 22:12
**took** [1] - 23:4
**track** [1] - 10:6
**trackers** [1] - 10:6
**tracking** [1] - 8:20
**traits** [1] - 16:25
**transcribed** [1] - 28:7
**transcript** [1] - 28:7
**transcripts** [1] - 7:9
**treated** [1] - 13:6
**treatment** [1] - 21:24
**trial** [16] - 2:11, 6:11, 8:14, 9:10, 12:8, 14:18, 15:5, 19:11, 19:24, 19:25, 20:2, 21:16, 22:23, 24:1, 24:7, 24:12
**tried** [2] - 17:9, 18:21
**true** [2] - 16:17, 17:14
**try** [5] - 9:7, 10:7, 18:22, 18:23
**trying** [1] - 17:10
**two** [6] - 8:12, 11:23, 12:10, 12:19, 14:1, 24:22

**U**

**U.S** [1] - 1:23
**ultimate** [1] - 17:18
**ultimately** [1] - 8:15
**under** [5] - 4:14, 5:13, 12:23, 14:22, 22:14
**underlying** [2] - 4:4, 5:7
**undertake** [1] - 23:9
**unique** [5] - 6:19, 7:1, 7:6, 8:13, 9:25
**UNITED** [2] - 1:1, 1:4
**United** [2] - 2:2, 2:4
**unjust** [1] - 20:22
**unlike** [1] - 4:22
**unresolved** [1] - 3:3
**unsuccessful** [2] - 10:9, 21:9
**unsupported** [1] - 14:15
**unusual** [1] - 19:1
**up** [5] - 9:12, 10:18,

15:2, 19:18, 26:18
**urban** [1] - 21:22
**USA** [1] - 28:4

**V**

**valuable** [1] - 9:4
**value** [4] - 18:19, 19:9, 19:10, 20:12
**variance** [3] - 13:2, 20:20
**variety** [1] - 11:15
**various** [5] - 2:18, 3:18, 3:20, 4:1, 6:17
**venture** [1] - 20:10
**verdict** [2] - 14:7, 26:22
**version** [2] - 4:12, 15:3
**versus** [1] - 2:2
**VI** [6] - 3:16, 3:23, 5:18, 11:5, 13:22, 13:25
**victim** [1] - 10:11
**view** [2] - 6:1, 19:23
**viewed** [1] - 17:10
**violation** [1] - 4:9
**violence** [3] - 3:21, 4:23, 14:1
**vocational** [1] - 26:4

**W**

**waiting** [1] - 7:19
**Waldman** [1] - 6:23
**wants** [3] - 3:12, 3:13, 17:16
**Washington** [3] - 7:16, 7:17, 10:20
**Washington's** [2] - 10:2, 10:6
**WELLS** [1] - 1:6
**Wells** [50] - 2:3, 2:10, 2:13, 3:15, 4:25, 5:16, 6:18, 6:25, 7:11, 7:13, 7:19, 7:20, 8:10, 8:12, 8:15, 8:16, 8:18, 8:23, 9:1, 9:3, 9:25, 10:11, 10:17, 10:19, 11:17, 11:18, 11:21, 12:11, 12:18, 15:4, 16:8, 17:10, 17:22, 18:4, 18:13, 18:14, 18:16, 18:22, 19:8, 19:14, 19:15, 20:10, 20:16, 21:14, 21:21, 22:15, 23:12, 23:13, 23:24, 25:3, 25:12, 25:24, 26:22, 28:5
**Wells'** [13] - 6:3, 6:9, 16:4, 16:16, 17:3, 17:7, 17:9, 17:20, 17:25, 23:21, 24:5, 24:16, 25:19

**West** [1] - 1:23
**whatnot** [1] - 17:9
**Whereof** [1] - 28:9
**whole** [3] - 16:14,
17:22, 18:10
**wiretaps** [1] - 24:3
**Wise** [6] - 1:16, 2:3, 6:8,
12:2, 12:6, 12:14
**wise** [1] - 16:11
**WISE** [9] - 2:2, 2:22,
4:2, 4:8, 5:25, 6:10,
21:1, 26:8, 26:10
**wish** [1] - 26:13
**Witness** [1] - 28:9
**witnesses** [1] - 24:2
**word** [1] - 10:4
**written** [3] - 13:5,
19:15, 21:9
**wrote** [2] - 12:9, 23:16

## Y

**years** [4] - 15:14, 17:20,
18:2, 25:23

## Z

**Zajac** [3] - 1:22, 28:3,
28:14