IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ANTONIO SHROPSHIRE,**<br><br>Defendant | **Criminal No. CCB 16-051**<br>**Civil No. CCB 21-202** |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE**

The United States of America, by its undersigned attorney, herein replies to the Defendant's Motion to Vacate under 28 U.S.C. 2255. ECF 454. For the reasons set forth below, the Defendant's motion should be denied.

I.     **PROCEDURAL HISTORY**

On February 23, 2017, a federal grand jury returned a Third Superseding Indictment charging Shropshire, Washington, Campbell and Wells, along with co-defendants Omari Thomas and former Baltimore Police Detective Momodu Gondo. Count One charged all defendants with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 841. Count Two charged Washington with possession with intent to distribute and distribution resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count Three charged Shropshire with possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. § 841(a)(1). Counts Four and Five charged Campbell with possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. § 841. Count Seven charged Shropshire with possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841. These charges stemmed from a drug distribution conspiracy perpetrated by the

1

Appellants, along with the help and protection of a now-former Baltimore Police Officer (Gondo).

A jury trial commenced on these charges on October 16, 2017.

A jury convicted the defendants on October 31, 2017, following an 11-day trial.

The District Court sentenced Shropshire to 300 months' imprisonment, entering its judgment March 1, 2018.

On June 24, 2020, the United States Court of Appeals for the Fourth Circuit issued an order affirming the Defendant's conviction.

On January 25, 2021, the Defendant filed a Motion to Vacate under 28 U.S.C. 2255. ECF 454.   On January 26, 2021, the Court issued an order directing the Government to respond to the Defendant's motion to vacate within 60 days.   ECF 455.   On February 26, 2021, the Defendant filed a second Motion to vacate under 28 U.S.C. 2255.   ECF 458.   On March 2, 2021, the Court issued an order granting the Defendant 28 days to notify of the Court which of the two motions to vacate he wished to pursue.   ECF 459.   On March 12, 2021, the Defendant advised the Court he wished to pursue the motion he filed on January 25, 2021, ECF 454.   The Court then denied without prejudice the Defendant's second motion to vacate.   ECF 463.   On April 20, 2021, the Defendant filed a Motion for an Expedited Evidentiary Hearing Under 28 U.S.C. 2255(b).   ECF 466.   On August 2, 2021, the Court filed an order directing the Government to respond to Defendant's motions by August 27, 2021.   ECF 474.

## II.   SUMMARY OF THE DEFENDANT'S ARGUMENTS

The Defendant argues that: (1) the Government interfered with his right to "attorney/client relationship and the right to prepare for trial," because certain papers were

temporarily taken from this cell by jail authorities when it appeared he was taking steps to endanger witnesses, ECF 454 at 4-11; (2) the Government "interfered with Shropshire's Due Process" and his right to choose whether to testify, in violation of his sixth Amendment "Autonomy Interest," again, because these papers were temporarily taken from his cell, ECF 454 at 11-15; (3) "trial counsel Guillaume was ineffective for failing to object to inadmissible evidence," ECF 454 at 15-24; (4) "trial counsel Davis was ineffective for failing to adequately explain the informal plea offer to Shropshire," ECF 454 at 24-27; and (5) "appellate counsel Richard Stolker was ineffective for failing to raise any sentencing issues that were ripe for appellate review," ECF 454 at 27-34.

### III. LAW

Section 2255 provides four avenues by which a petitioner can seek relief:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a); *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015)

Section 2255 provides that habeas relief should be awarded where

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b).  Once the petitioner has shown this, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*.  Thus, a district court's resolution of a prisoner's §

3

2255 petition proceeds in two steps. *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010); *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007). First, the district court must determine whether the prisoner has met his burden of showing that his sentence is unlawful on one of the specified grounds. Second, if the prisoner's sentence is found unlawful on one of those grounds, the district court should grant the prisoner an "appropriate" remedy, which includes discharge, resentencing, or a new trial. *Id*. If the prisoner fails to show that his sentence is unlawful on one of the specified grounds under the threshold inquiry, however, "the court must deny the petition." *Id*.

As the Supreme Court has held, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1981). The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a Defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." *Id*. at 164–65.

As the Fourth Circuit has held, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999). "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.'" *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quoting *Mikalajunas*, 186 F.3d at 493). As for prejudice, it is not enough for a petitioner to

4

demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. *Mikalajunas*, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998); *see Mikalajunas*, 186 F.3d at 494 (indicating that a petitioner must demonstrate "actual factual innocence"). A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (*quoting Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. *See United States v. Baptiste*, 596 F.3d 214, 216 n. 1 (4th Cir. 2010)

5

(*quoting Massaro v. United States*, 538 U.S. 500, 504–06 (2003)) ("'[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance' because the trial record is 'often incomplete or inadequate for [addressing such claims on direct review,]' thereby risking the failure of '[e]ven meritorious claims.'") (alterations in original).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has interpreted the right to counsel as providing a Defendant with "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)) (emphasis added). In order to demonstrate that defense counsel failed to provide effective assistance, in violation of the Constitution, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. *Id*. at 687–88, 104. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of this test articulated in *Strickland*. *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of the Strickland test, courts "must be highly deferential." *Id*. at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381–82 (1986) (discussing the "highly demanding" *Strickland* standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the Defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless

representation." *Springer v. Collins*, 586 F.2d 329, 332 (4th Cir. 1978); *see Strickland*, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong of the *Strickland* test requires a petitioner to "affirmatively prove prejudice." *Id*. at 693. To meet this prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004).

IV. **ARGUMENT**

A. <u>**Claims Related to his Missing "Notes"**</u>

The Defendant failed to raise his constitutional claims concerning his missing notes on direct appeal. Therefore, the issue is procedurally barred.

B. <u>**Ineffective Assistance of Counsel Claims**</u>

All of the complaints the Defendant lodges about his lawyers' performance fail to satisfy the first prong of *Strickland*. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104

7

S.Ct. at 2065. "It is well recognized that classic tactical decisions may be made *without* a defendant's consent." *See Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (emphasis added). Specifically, "[d]ecisions that may be made without the defendant's consent 'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.' " *Id.* (citing *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). All of the Defendant's claims fall into one of these categories of decisions that are reserved for counsel and are not subject to second-guessing by a Defendant collaterally attacking his conviction.

**1. Claims Related to His Missing Notes**

On direct appeal, the Defendant argued his counsel "failed to protect his Sixth Amendment rights after the Government's unjustified seizure of Shropshire's trial preparation documents." Def. Br. 76.

On October 6, 2018, during the Defendant's trial, counsel for the United States and counsel for Shropshire made the following representations to the District Court concerning Shropshire's alleged missing notes:

> MR. WISE: So -- and this is partially reflected in the docket. There was -- law enforcement became alerted to the fact that on recorded jail calls, Mr. Shropshire was discussing personal identifying information of likely Government witnesses.
>
> Out of concern over those witnesses' safety, the detention center where he was housed was alerted to it; and a search was made, and papers were recovered that included such information. Those were provided to the U.S. Attorney's Office. The U.S. Attorney's Office, using a separate prosecutor, not involved in this case, reviewed those documents.
>
> All of the documents that were seized that were in the possession of the United States were returned to Mr. Shropshire's counsel with the exception of the

8

one document that contained the personal identifying information.

And we have learned, I believe from Mr. Guillaume, although I haven't reviewed this, that that was a document prepared not by Mr. Shropshire but by Ms. Kahan, the paralegal, that was used by both previous counsel that Mr. Shropshire had and Mr. Guillaume.
So there have been no -- the only thing that is --that has not been returned to Mr. Shropshire is this document that was prepared by a paralegal working at the direction of counsel.

(Government counsel conferred.)

MR. WISE: And just to be clear, we haven't reviewed these, but it is my understanding that, categorically, we were never in possession of notes or handwritten notes or anything that fits in those categories that are consistent with what Mr. Shropshire has said.

THE COURT: Okay.

MR. GUILLAUME: Your Honor, not to belabor the point, but just to make the record clear -- I know I brought this up twice before to Your Honor. Your Honor is aware of a docketed letter sent by my client recently to the Court with respect to this very same issue.

I was returned some items by, I assumed it was either the marshals or the U.S. Attorney's Office. The person didn't identify themselves to me.

But, in any event, it doesn't matter. I gave those belongings to my client, and he still indicated that there were some things missing.

On his behalf, I have called over to the jail, spoken with the head of security. They indicated they do not have any possessions of his. I've confirmed with the marshals that they don't have anything of his.

And you've heard what the U.S. Attorney's Office has said. So there apparently are some handwritten notes in a composition binder that are missing.

Just so the record is clear, that I guess all three entities, U.S. Attorney, U.S. Marshal, and the Chesapeake Detention Facility, are all saying that they are no longer in possession of these items. I've spoken with each entity myself, so --

THE COURT: Okay.

JA 1502-1504.

On direct appeal, the Defendant argued that following the above exchange,

> The matter of the removed documents remained unresolved and was never again discussed, evaluated or questioned during the trial. Other than defense counsel's expressed concern that the seized materials (or some of them) had not been returned to his client, the issue never was considered, much less resolved, by the trial court.

Def. Br. 79-80.

In its response, the Government argued that based on the Defendant's representations, the Fourth Circuit, "lack[ed] a sufficient record to determine whether any documents were not returned and whether Shropshire's trial counsel was ineffective." Govt. Br. At 46.

The Fourth Circuit agreed with the Government's analysis holding:

> Shropshire also seeks to raise an ineffective-assistance-of-counsel claim. He contends that his counsel failed to protect his Sixth Amendment rights after documents were allegedly taken during a search of his jail cell. As Shropshire concedes in his brief, however, "[t]he matter of the removed documents remained unresolved and was never again discussed, evaluated[,] or questioned during the trial. . . . [T]he issue never was considered, much less resolved, by the trial court." Appellants' Br. 79−80. Since this record fails to "conclusively" show ineffective assistance, we decline to address it. *United States v. Faulls*, 821 F.3d 502, 507 (4th Cir. 2016); *see also United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997).

*United States v. Shropshire*, No. 18-4148 at 16 (June 24, 2020).

While the Defendant's claim, based on his own characterization of the record, could not be addressed on direct appeal, as the Government argued before the Fourth Circuit:

> And in any event, even taking the record we have, there is no showing made of any ineffectiveness at all. The above details demonstrate there was a legitimate security risk and that prison officials properly responded to try to mitigate the potential harm to a witness. In this way, there was simply nothing Shropshire's attorney could or should have done differently. Moreover, while Shropshire vaguely suggests that some unspecified questions of some unspecified witnesses might have been suggested by Shropshire to his counsel to ask at trial, Def. Br. at 80, this is far too vague to support the heavy burden under *Strickland* to show ineffectiveness. In short, there is no showing of any failure in performance by his counsel, nor is there any showing of required prejudice in that the trial would have somehow come out differently had the security issue and cell

10

search not occurred.  Thus, on this record, there is no basis to claim ineffectiveness.

Govt. Br. at 46.

### 2. Claims that Trial Counsel Was Ineffective for Failing to Object to Inadmissible Evidence

Shropshire faults his counsel for not objecting to "Washington, Campbell and Wells out-of-court statements." ECF 454 at 15-24.  In Shropshire's opinion, the Government failed to establish that a conspiracy existed.  Therefore, these statements, according to Shropshire, were not in furtherance of the conspiracy and inadmissible.  Shropshire's argument ignores the overwhelming evidence that was presented to the jury that established the existence of a conspiracy of which he and his co-defendants were all a part.  Simply put, the objections he faults his counsel for making would have been meritless.

Even assuming counsel had valid objections to raise to this testimony did fail to object when a, it does not amount to ineffective assistance.  "Constitutionally effective assistance does not require the assertion of every possible valid objection . . . . Courts therefore sensibly recognize that trial counsel must be granted latitude in making tactical and strategic decisions of this sort." *Moore v. United States*, 934 F.Supp.724, 727 (E.D.Va. 1996) *citing Jones v. Barnes*, 463 U.S. 745 (1983); *Bunch v. Thompson*, 949 F.2d 1354, 1364 (4th Cir. 1991) (stating that in habeas corpus petitions, the court should "credit plausible strategic judgments" to trial counsel).  "[T]he use and timing of objections at trial is a quintessential matter of strategy and discretion on the part of the trial attorney and will very seldom constitute objectively deficient representation." *Curry v. United States*, 2015 WL 733274, *20 (D.N.J. February 20, 2015) (denial of 2255) citing *United States v. Nguyen*, 379 F. App'x 177, 181 (3d Cir.2010), cert. denied, ––– U.S. –––, 131 S.Ct. 1535, 179

L.Ed.2d 349 (2011).

### 3. Claims that Trial Counsel Was Ineffective For Failing to Explain the Informal Plea Offer

Shropshire claims that "trial counsel Davis was ineffective for failing to adequately explain the informal plea offer to Shropshire," ECF 454 at 24-27.   Shropshire never explains how Davis was ineffective.   In fact, Shropshire attaches to his filing multiple letters he received from Davis communicating with him about a possible plea.   The fact that Shropshire now claims he didn't understand what his lawyer was clearly trying to communicate to him does not amount to ineffective assistance.

## C. Claims that Appellate Counsel was Ineffective for Failing to Raise Sentencing Issues on Direct Appeal

Shropshire claims that "appellate counsel Richard Stolker was ineffective for failing to raise any sentencing issues that were ripe for appellate review," ECF 454 at 27-34.   Rather than identify any actual sentencing issues that Shropshire's appellate counsel failed to raise, Shropshire instead tries to re-litigate the evidence presented at trial.

## D. There is No Prejudice

Even if the Defendant were able to demonstrate that he had satisfied the first prong of *Strickland*, he cannot establish the second as to any of his claims.   The Defendant has not established that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the

Defendant's claim for relief pursuant to 28 U.S.C. § 2255, without holding an evidentiary hearing.

                Respectfully submitted,

                Jonathan Lenzner
                Acting United States Attorney

By: _____/s/_____
                Leo J. Wise
                Assistant United States Attorney
                36 South Charles Street
                Fourth Floor
                Baltimore, Maryland 21201
                (410) 209-4800

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was filed with the Court, using the CM/ECF system electronically and mailed, first-class- postage prepaid, to Antonio Shropshire the Defendant, Defendant *pro se*.

                _____/s/_____
                Leo J. Wise
                Assistant United States Attorney