
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ALEXANDER CAMPBELL,**<br><br>Defendant | **Criminal No. CCB 16-051**<br><br>**Civil No. CCB 21-3043** |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE

The United States of America, by its undersigned attorney, herein replies to the Defendant Alexander Campbell's Motion to Vacate under 28 U.S.C. § 2255. ECF 481. For the reasons set forth below, the Defendant's motion should be denied.

## I. PROCEDURAL HISTORY

On February 23, 2017, a federal grand jury returned a Third Superseding Indictment against the Defendant and four co-defendants including Antonio Shropshire, Antoine Washington, Glenn Wells, Omari Thomas and former Baltimore Police Detective Momodu Gondo. Count One charged all defendants with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 841. Count Two charged Washington with possession with intent to distribute and distribution resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count Three charged Shropshire with possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. § 841(a)(1). Counts Four and Five charged Campbell with possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. § 841. Count Seven charged Shropshire with possession with intent to distribute heroin and cocaine, in violation of 21

U.S.C. § 841. These charges stemmed from a drug distribution conspiracy perpetrated by the defendants, along with the help and protection of a now-former Baltimore Police Officer (Gondo).

A jury trial commenced on these charges on October 16, 2017.

A jury convicted the defendants on October 31, 2017, following an 11-day trial.

The District Court sentenced Campbell to 188 months' imprisonment, entering its judgment March 1, 2018.

On July 16, 2020, the United States Court of Appeals for the Fourth Circuit issued an order affirming the Defendant's conviction.

On November 29, 2021, the Defendant filed a Motion to Vacate under 28 U.S.C. § 2255. ECF 454. The Defendant's motion was timely filed because a federal criminal conviction becomes final, for the purpose of calculating one-year period in which a defendant may move to vacate, when the time expires for filing a petition for certiorari, *United States v. Clay*, 527 U.S. 1072 (2003) and on March 19, 2020, the United States Supreme Court issued an order extending the deadline for any petition for a writ of certiorari to 150 days from the date of the lower court judgment. Thus, the Defendant had until December 13, 2021, to file his motion to vacate.

## II.     SUMMARY OF THE DEFENDANT'S ARGUMENTS

The Defendant argues that: (1) "appellate counsel was ineffective for failing to raise the rule 29, insufficient evidence, issue on direct appeal" mot. at 2-10; (2) "appellate counsel was ineffective for failing to raise the Government's failure to prove Campbell distributed a kilogram or more" mot. at 10-20; (3) "Brady v. Maryland violation" mot. at 16; (4) "appellate counsel was ineffective for railing to raise Campbell's four level drug quantity enhancement," mot. at 17-19.

### III.   LAW

Section 2255 provides four avenues by which a petitioner can seek relief:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a); *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015)

Section 2255 provides that habeas relief should be awarded where

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b).  Once the petitioner has shown this, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*.  Thus, a district court's resolution of a prisoner's § 2255 petition proceeds in two steps.  *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010); *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007).  First, the district court must determine whether the prisoner has met his burden of showing that his sentence is unlawful on one of the specified grounds.  Second, if the prisoner's sentence is found unlawful on one of those grounds, the district court should grant the prisoner an "appropriate" remedy, which includes discharge, resentencing, or a new trial.  *Id*.  If the prisoner fails to show that his sentence is unlawful on one of the specified grounds under the threshold inquiry, however, "the court must deny the petition."  *Id*.

As the Supreme Court has held, with limited exceptions, a petitioner advancing new claims

3

asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1981). The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a Defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." *Id*. at 164–65.

As the Fourth Circuit has held, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999). "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.'" *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quoting *Mikalajunas*, 186 F.3d at 493). As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. *Mikalajunas*, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998); *see Mikalajunas*, 186 F.3d at 494 (indicating that a petitioner must demonstrate "actual

4

factual innocence"). A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (*quoting Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. *See United States v. Baptiste*, 596 F.3d 214, 216 n. 1 (4th Cir. 2010) (*quoting Massaro v. United States*, 538 U.S. 500, 504–06 (2003)) ("'[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance' because the trial record is 'often incomplete or inadequate for [addressing such claims on direct review,]' thereby risking the failure of '[e]ven meritorious claims.'") (alterations in original).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has interpreted the right to counsel as providing a Defendant with "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)) (emphasis

added). In order to demonstrate that defense counsel failed to provide effective assistance, in violation of the Constitution, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. *Id*. at 687–88, 104. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of this test articulated in *Strickland*. *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of the Strickland test, courts "must be highly deferential." *Id*. at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381–82 (1986) (discussing the "highly demanding" *Strickland* standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the Defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." *Springer v. Collins*, 586 F.2d 329, 332 (4th Cir. 1978); *see Strickland*, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong of the *Strickland* test requires a petitioner to "affirmatively prove prejudice." *Id*. at 693. To meet this prong, the petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. If the Petitioner fails to prove either of the two prongs of the *Strickland* test, the Court need not evaluate the other prong of the test. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004).

## IV.   ARGUMENT

The Defendant's first argument that "appellate counsel was ineffective for failing to raise the rule 29, insufficient evidence, issue on direct appeal" mot. at 2-10, appears to be that the Government did not prove a single conspiracy, as charged in the Superseding Indictment, but rather multiple conspiracies. Mot. at 3 ("The problem is the Government's evidence was presented just as the Superseding Indictments were, which in turn, proved multiple conspiracies, and not the charged conspiracy."). The Defendant then argues, "[b]ecause the evidence was insufficient and multiple conspiracies were presented, appellate counsel was ineffective for failing to raise the issue on direct appeal." Mot. at 10. Appellate counsel did not make a sufficiency of the evidence argument on direct appeal. The failure to do so does not amount to rendering ineffective assistance. "In applying [the two-part *Strickland* test] to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) *quoting Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir.1993). As the Fourth Circuit further explained in *Bell v. Jarvis*:

> Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate

7

> examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes,* 463 U.S. 745, 752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *see also Smith v. South Carolina,* 882 F.2d 895, 899 (4th Cir.1989). Indeed, " '[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones,* 463 U.S. at 751, 103 S.Ct. 3308); *see also Smith,* 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although recognizing that "[n]otwithstanding *Barnes,* it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on direct appeal, the Supreme Court has recently reiterated that "it [will be] difficult to demonstrate that counsel was incompetent." *Robbins,* 120 S.Ct. at 765. " 'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.' " *Id.* (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986)).

236 F.3d 149, 164 (4th Cir. 2000). Nothing in the Defendant's motion overcomes the presumption that appellate counsel decided which issues were most likely to afford relief on appeal. The evidence of a single conspiracy presented at trial was overwhelming. The Defendant's arguments slicing and dicing the evidence, while detailed and thoughtful, evidence a lack of understanding of the law of conspiracy rather than a paucity of evidence that he was a member of one.

The Defendant's second argument, that "appellate counsel was ineffective for failing to raise the Government's failure to prove Campbell distributed a kilogram or more" mot. at 10-20, is a re-tread of his first. He again argues that the evidence showed multiple conspiracies and, therefore, that the quantity attributed to him was less than a kilogram or more. This argument fails for the same reasons as his first one.

The Defendant's third argument, "Brady v. Maryland violation" mot. at 16, claims that a quote from a book written about the Gun Trace Task Force case reveals Brady information that

was withheld from the defense in this case.  Mot. at 16.  It does not.  The Defendant claims that undersigned counsel "told [Justin Fenton] something along the lines of investigators now realized that Gondo hadn't been funneling drugs to the Shropshire crew was they had initially believed." *Id*.  The statement that the Defendant quotes is not attributed to undersigned counsel.  Furthermore, it is not *Brady* material.  If investigators at one point believed that former BPD Detective Momodu Gondo was giving drugs to the Shropshire drug trafficking organization in addition to providing them with law enforcement information and later concluded that he was only doing the latter that change does not exculpate the Defendant in any way.

The Defendant's fourth argument, that "appellate counsel was ineffective for failing to raise Campbell's four level drug quantity enhancement," mot. at 17-19, fails for the same reasons as his first two.  Nothing in the Defendant's motion overcomes the presumption that appellate counsel decided which issues were most likely to afford relief on appeal and that appellate counsel concluded that challenging his sentence was not one of them.

Even if the Defendant were able to demonstrate that he had satisfied the first prong of *Strickland*, he cannot establish the second as to any of his claims.  The Defendant has not established that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the Defendant's claim for relief pursuant to 28 U.S.C. § 2255, without holding an evidentiary hearing.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:_____/s/_____
Leo J. Wise
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was filed with the Court, using the CM/ECF system electronically and mailed, first-class- postage prepaid, to Alexander Campbell, Defendant *pro se*.

_____/s/_____
Leo J. Wise
Assistant United States Attorney