IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | |
| GLEN WELLS, | : | CRIMINAL NO. SAG-16-0051 |
| Defendant. | : | |

...oooOooo...

GOVERNMENT'S RESPONSE TO MOTION FOR COMPASSIONATE
RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

The United States of America, by undersigned counsel, hereby responds to the *Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) the So Called Compassionate Release Statute as Amended by The First Step Act of 2018*, (ECF 537), and to *Defendant's Motion for Reduction of Sentence Pursuant to Amendment 821 to the United States Sentencing Guidelines and 18 U.S.C. § 3582(c)(2) and for Motion of Appointment of Counsel* (ECF 534) filed by Glen Wells ("Defendant").[1]  Defendant has not established extraordinary and compelling reasons for compassionate release, and the government opposes the request on the basis of the factors set forth at 18 U.S.C. § 3553(a).

## BACKGROUND

On October 16, 2017, a jury found Wells guilty of conspiring to distribute and possession with intent to distribute a controlled dangerous substance in violation of 21 U.S.C. § 846.  ECF 280.  On February 22, 2018, United States District Judge Catherine C. Blake sentenced Wells to 188 months in prison.  ECF 359.

---

[1] ECF 534 and 537 seem to be related and seek the same relief, *i.e.*, a reduction in sentence. Consequently, the government's response relates to both motions.

On March 1, 2018, Wells filed a timely notice of an appeal. ECF 352. The Fourth Circuit affirmed his conviction on June 24, 2020. ECF 437, 438; *see United States v. Campbell*, 963 F.3d 309 (4th Cir. 2020).

On June 24, 2021, Wells filed a Motion to Vacate under 28 U.S.C. § 2255. ECF 467. This Court denied the motion finding that Wells would have received the same 188-month sentence of imprisonment "whether or not he qualified as a career offender." ECF 504 at 4.

On April 5, 2024, based upon the Sentencing Commission's retroactive application of Amendment 821, the defendant filed the pending motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). ECF 534 at 2. Other than listing how Amendment 821 changed particular Guideline provisions, Wells fails to specify how any of those changes relate to the sentence Judge Blake imposed. *Id*. at 2-10. He simply asserts the conclusion that "Defendant has relief coming under these amendments." *Id*. at 10.

On April 25, 2024, the defendant filed the pending motion for compassionate relief. ECF 537. Under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), the defendant seeks a compassionate reduction of his sentence on three grounds:

> (1) the sentencing judge's erroneous reliance on the defendant's career offender status "substantially affected" the ultimate sentence imposed (ECF 537 at 13);
> (2) the defendant's 76-year old mother is "incapacitated" and needs a caregiver, *id*. at 14;
> (3) the defendant's "substantial efforts of rehabilitation," *id*. at 15; and
> (4) the COVID-19 lockdowns and restrictions created "harsh conditions of confinement," *id*. at 16.

## **THE LAW**

In general, a sentence imposed in a criminal case is final and cannot be reduced. *See* 18 U.S.C. § 3582(b); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010). However, the First Step Act, enacted in December 2018, provides a narrow exception when "extraordinary and compelling reasons warrant a reduction." 18 U.S.C. § 3582(c)(1)(A). The Court may consider a

motion for reduction of sentence filed pursuant to § 3582(c)(1)(A) if the following procedures are met:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

*Id*. Here, more than 30 days have elapsed since the defendant asked the warden to bring a motion for compassionate relief on his behalf. Consequently, Wells has exhausted his administrative remedies.

However, before the Court can grant a motion for reduction of sentence filed in accordance with the foregoing procedure, it must find that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is consistent with the applicable sentencing factors set forth in section 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i). While the U.S. Sentencing Commission has provided a list of specific reasons that might be considered "extraordinary and compelling," the list is not exhaustive, and the Court is not bound by them. *See* U.S.S.G § 1B1.13 cmt. n.1 ((A)-(D); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *see also, United States v. Shropshire*, No. CR SAG-16-51, 2024 WL 22017 at *2-3 (D. Md. Jan. 2, 2024). As the movant under § 3582(c)(2), Wells "bears the burden of establishing" eligibility. *United States v. Hamilton,* 715 F.3d 328, 337 (11th Cir. 2013).

## ARGUMENT

**1. The Defendant's Erroneous Classification as a Career Offender Was Not the Reason Judge Blake Imposed a Sentence of 188 Months Imprisonment.**

In support of his motion for a reduction of sentence, Wells renews the claim he made in his § 2255 post-conviction petition. *See* ECF 467. There, Wells argued that pursuant to *United States v. Norman*, 935 F.3d 232, 237 (4th Cir. 2019), Judge Blake sentenced him under the career

3

offender guidelines based on the erroneous belief at the time that his offense of conviction for engaging in a drug conspiracy in violation of 18 U.S.C. § 846 constituted a "controlled substance offense." ECF 467 at 4.  Eighteen months later, the Fourth Circuit decided *Norman*, which held that § 846 was not a controlled substance offense. *Id*.  Wells argued that Judge Blake had to impose a substantially higher sentence than she might have otherwise because his lawyers had been ineffective for not contesting his career offender status under *Norman*. ECF 467.  This Court denied the defendant's motion for post-conviction relief finding, *inter alia*, that Judge Blake's "sentence would have been the same had [the defendant] not been deemed a career offender." ECF 504 at 2.

Similarly, here, the defendant argues that he is entitled to compassionate relief because Judge Blake's flawed conclusion that he was a career offender "substantially affected" the sentence she imposed.  ECF 537 at 13.  However, the defendant concedes that Judge Blake ultimately did not sentence him under the career offender guidelines, but rather, chose to sentence him under the same guideline range had he not been deemed a career offender.  ECF 504 at 13 ("Concededly, the court departed downward").  Notwithstanding the fact that he was not sentenced as a career offender, the defendant makes the unsupported claim that Judge Blake's "ultimate sentence[ing] . . . decision was substantially affected by the erroneous consideration that [he] was a career offender." *Id*.  Without specifying how, he argues that his sentence was "anchored in an erroneous assumption." *Id*.  In other words, but for the initial erroneous finding that Wells was a career offender, Judge Blake would never have imposed the sentence she did.  As a result, he claims that his sentence was higher than it might otherwise have been, and that constitutes an "extraordinary and compelling reason" for a sentence reduction. *Id*. at 12-13 (citing cases finding a change in career offender status may qualify as a reason for compassionate relief).

The record at sentencing proves otherwise. As this Court noted in its opinion denying the defendant's post-conviction petition, Judge Blake imposed a sentence based on her calculation of the defendant's non-career-offender guidelines, not his career offender status.

> The record conclusively demonstrates that Wells's sentence would have been the same had he not been deemed a career offender. The sentencing judge affirmed that "at least one to three kilos of heroin was foreseeable to [Wells] based on the evidence that I heard at the trial." ECF 478-1 at 22:20–23 (emphasis added). That amount results in a base offense level of at least 30 pursuant to guideline 2D1.1(a). The sentencing judge in fact reiterated that "the standard of reasonable foreseeability would, as I say, at least get us to an offense level 30." *Id*. at 15:24–25 (emphasis added). Additionally, Wells's criminal history category, calculated without reference to his career offender status, id. at 24:23–25, is VI, which is the same criminal history category as a career offender. Thus, Wells's advisory guideline range, had he not been a career offender, would still have been at least 168–210 months.
>
> Importantly, the sentencing judge imposed a sentence right in the middle of that lower, non-career-offender guideline range, and emphatically declined to sentence Wells under the career offender guidelines. The Statement of Reasons accompanying Wells's sentencing paperwork states, "career offender guideline . . . too high," as a rationale for the dramatic variance. ECF 360.

ECF 504 at 2.

To leave no doubt about her intentions, Judge Blake made it clear that the sentence imposed under the forgoing Guideline calculations would not be affected "by a different ruling if [she] happen[ed] to be wrong about the [defendant's] career offender status." ECF 504 at 3 citing ECF 478-1 at 5:21-24; 24:21-25. In short, Judge Blake expressly rejected the career offender guideline in favor of a "dramatic downward variance to a sentence within the guideline range she would have applied if Wells were not a career offender." *Id*. at 3.

In light of the record at sentencing, the defendant cannot establish that his classification as a career offended affected his ultimate sentence, much less substantially so. Therefore, that is not an extraordinary and compelling reason to grant compassionate relief under 18 U.S.C. § 3582(c)(1)(A).

## 2. The Health of the Defendant's Mother Is Not An Extraordinary and Compelling Reason to Grant Compassionate Relief

The United States Sentencing Guidelines provide a non-exhaustive list of circumstances that might constitute an extraordinary and compelling reason to grant compassionate release. *See* USSG § 1B1.13(b). Among the reasons listed is the "Family Circumstances of the Defendant," including the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." USSG § 1B1.13(b)(3)(C).

The defendant claims that this provision applies to his 76-year old mother. ECF 537 at 10, 14. Wells asserts that his mother is suffering from "early onset dementia, COPD, and depression." *Id*. at 10. She was recently hospitalized in March of this year but released with instructions to use oxygen and a wheelchair. Wells further asserts that his sister has been caring for his mother, and she "cannot shoulder that duty indefinitely because she is the sole provider for the household." *Id*. at 10, 14. Based on these circumstances, the defendant argues that he is his mother's "only caregiver," and he should be released to serve in that role or, alternatively, his sentence should be reduced. *Id*. at 10.

The defendant has failed to establish his mother's "incapacitation." Age-related dementia and decreased lung efficiency are not uncommon physical problems experienced by aging adults. While such health problems can unfortunately present serious challenges for the extended family, the circumstances described by Wells do not establish that they are chronic problems that have rendered her helpless to a significant degree. It appears that she remains mobile and able to participate in her own care.

Furthermore, the defendant has also failed to establish that he is the only person available to care for his mother. By his own account, his mother has been, and continues to be, under the care of his sister. The defendant offers no information about the availability of other family members or friends who are able to help out, nor his mother's financial situation and the

6

possibility of third party assistance, even if parttime.  While the current situation unfortunately places an economic burden on his sister, it is not an extraordinary and compelling reason to release the defendant from the lawfully imposed term of imprisonment he is currently serving. C*ompare, United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022) (citations omitted) (death of defendant's wife who was the primary caregiver of their minor child did not warrant release under the totality of the circumstances).

### 3. The Defendant's Efforts Toward Rehabilitation Do Not Warrant Release

Wells argues that his efforts toward rehabilitation have made him a "success story" - so much so that he is "no longer the same person [the] Court incarcerated."  ECF 537 at 15-16.  In support of his claim, he provided the Court with a copy of his "Programing Efforts," which outlines the activities and courses he has taken while incarcerated.  ECF 537-1 at 2-7.  For example, in June 2023, after being incarcerated for more than six years, he started a work assignment as an orderly.  *Id*. at 2.  He received his GED in 2018 and has taken a wide range of educational courses spanning the years of his incarceration.  *Id*.

While it is commendable that Wells has taken advantage of some of the activities and courses that the BOP offers, it does not amount to an extraordinary and compelling reason for his release.  "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see also*, USSG 1B1.13(d).  However, rehabilitation while serving his sentence "may be considered in combination with other circumstances" that might warrant a sentence reduction.  USSG 1B1.13(d).

The defendant is no stranger to the criminal justice system.  Even without his career offender status, his criminal history category at the time of sentencing was VI, the highest level. As the defendant knows well, participation in educational courses and work assignments while incarcerated is expected of all prisoners and has its own inherent value.  Given the little weight,

7

if any, the Court should give to the defendant's other reasons for relief, his rehabilitation efforts are not substantial enough to earn him release after serving only approximately 40% of his prison sentence. Thus, while commendable, the defendant's efforts toward rehabilitation should not be a significant consideration when weighing his possible release.

> 4. **The Unusual Restrictions Placed on Prisoners During the Pandemic Does Not In Itself Warrant the Defendant's Release**

In support of his fourth claim for compassionate relief, the defendant argues that the COVID-19 pandemic resulted in more lockdowns and restrictions than normal. ECF 537 at 16. The increased restrictions were imposed for his health and safety and those of other prisoners. *Id*. In short, had it not been for the safety precautions imposed due to COVID-19, he would have spent more "ordinary day[s] in prison" than he did. *Id*. at 17 quoting *United States v. Ciprian*, 2021 U.S. Dist. LEXIS at *8 (S.D.N.Y. Feb. 2021).

Unlike the cases cited by Wells, he does not expound on how his particular correctional institute was impacted by the pandemic. Nor does identify how his state of health at the time placed him at a greater risk of a serious illness or death as a result of COVID as compared to other prisoners similarly situated. *Cf. United States v. Lewin*, No. CR SAG-15-198 2020 WL 3469516 at *3 (D. Md. June 25, 2020) (discussing particularized risks based on a defendant's medical condition and the institution's history); *Shropshire*, *supra*, 2024 WL 22017 at *3-5) (recognizing how the passage of time and medical developments have "changed the landscape with respect to the pandemic"). Entries made in Wells' "Program Efforts" reflect that he took classes while in "lockdown" for two months in 2020, and that his COVID-19 test results in

August 2021 were negative. ECF 537-1 at 2-3. At the age of 35, he reports no health problems or comorbidities well after COVID-19 is no longer considered a public health emergency.[2]

In sum, the defendant has failed to support the claim that COVID-19 impacted him and his correctional institute to a degree that warrants compassionate relief, either alone or in combination with the other claims in his motion.

> 5. **The Factors Set Forth in 18 U.S.C. § 3553(a) Do Not Weigh in Favor of a Sentence Reduction**

Assuming *arguendo* that the defendant has established an extraordinary and compelling reason for compassionate relief under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against release. In assessing the various factors, the court must consider:

> (A) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) the need to afford adequate deterrence to criminal conduct;
> (C) the need to protect the public from further crimes of the defendant; and
> (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

In considering these factors, the Fourth Circuit has made clear that the important interests of deterrence and respect for the law would not be served if a person were released after serving less than half of his sentence. *See United States v. Jenkins*, 22 F.4th 162, 171 (4th Cir. 2021); *accord United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (holding that "[t]he district court was entitled to consider the amount of time [defendant] already had served as one factor in the § 3553(a) analysis"); *United States v. Clay*, 2022 U.S. Dist. LEXIS 228630 (D. Md. Dec. 19,

---

[2] Archive for Center for Disease Control and Prevention
https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID%2D19%20PHE,share%20certain%20data%20will%20change.

2022) (denying compassionate release where "Clay has served less than half of his initial 30-year sentence").

Here, as Judge Blake found at sentencing, the defendant was convicted of participating in a in a large-scale heroin trafficking ring that involved a home invasion and the criminal participation of a Baltimore police officer:

> Obviously, there are a number of factors to consider under 3553(a), starting with the nature and circumstances of the offense. This is an extremely serious offense. Mr. Wells was involved in a very substantial drug conspiracy. He was part of that. I understand that he was not the organizer, he was not the leader, he was not involved for the entire time period. But he clearly was involved in a significant way . . . [A]s a factual matter, I think certainly at least one to three kilos of heroin was foreseeable to him based on the evidence that I heard at the trial. He was a supplier. Again, not saying he was the only one. But he was a supplier, at least at times, during this conspiracy. He brought his relationship with the police officer, former police officer Gondo, into this conspiracy. Then others in the conspiracy took advantage of it.
>
> And very significant is his involvement in the armed home invasion of Mr. Anderson. I recognize and appreciate that I'm sure he, he hoped, as the others did, that it would be a breaking in and nobody would be there, but it's certainly foreseeable when you undertake something like that that a gun will be, will be necessary. And that is what happened. So that's a very significant incident just in itself.

ECF 478-1 at 22-23.

Given the defendant's long criminal history, the serious nature of the offense, the introduction of a police officer into the criminal enterprise, the foreseeable use of weapons, the home invasion, and the high violent crime rate in Baltimore at the time of the offense and now, a reduction of sentence would not have an adequate deterrent effect, promote respect for the law, nor protect the public. In light of the fact that Judge Blake gave Wells a sentence in the middle of the guideline range, the foregoing factors, when applied to all four claims for relief, separately and combined, weigh against reducing his sentence after he has served less than half of his term of imprisonment.

The government respectfully requests that the Court deny the defendant's motion for a sentence reduction.

                          Respectfully submitted,

                          Erek L. Barron
                          United States Attorney

By:         /s/                
     Martin Clarke
     Assistant United States Attorney

     Office of the United States Attorney
     District of Maryland
     36 South Charles Street, Fourth Floor
     Baltimore, Maryland 21201
     (410) 209-4840

## **CERTIFICATE OF SERVICE**

This is to certify that on this 20th day June 2024, a copy of the foregoing *Government's Response to Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* was electronically filed and mailed to the following:

Glen Wells
Reg. No. 63284-0377
FCI Edgefield
P.O. Box 725
Edgefield, SC  29824

                                         _____/s/_____
                                         Martin J. Clarke
                                         Assistant United States Attorney